March 10, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1989

CANDELARIA CUELLO-SUAREZ, ET AL.,

Plaintiffs, Appellees,

v.

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA),

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Stahl, Circuit Judge,

Aldrich and Coffin, Senior Circuit Judges.

Karen M. Loyola Peralta for appellant.

A. Santiago Villalonga for appellees.

March 10, 1993

COFFIN, Senior Circuit Judge. Plaintiff, a United States

citizen who was born in the Dominican Republic, claims that she

was denied promotion on many occasions because of her national

origin. She brought suit against her employer, the Puerto Rico

Electric Power Authority (PREPA), under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. 2000e-(2), and Law 100 of June

30, 1959 of the Commonwealth of Puerto Rico, P.R. Laws Ann. tit.

29, 146.1 After a bench trial, the district court gave

judgment for the plaintiff and PREPA appeals. We affirm.

PREPA now challenges the court's holding that plaintiff made

out a prima facie case and its allegedly improper shifting of the

burden of proof. Although the trial lasted four days, appellant

did not provide us with a transcript, as required by Fed. R. App.

P. 10(b)(2). We have since obtained it,2 have reviewed it to

check our understanding of the evidence, but rely principally on

the facts as set forth by the district court, which in turn

relied on the post-trial briefs of counsel.

Plaintiff, a seventeen-year veteran employee of PREPA, has

held various positions as clerk and typist. She possesses a B.A.

degree in business administration with a major in accounting and

a minor in management and, shortly after commencement of this

litigation, obtained her license as a Certified Public

1 She also asserted a claim under 42 U.S.C. 1981 that was
dismissed by the district court and is not a part of this appeal.

2 The transcript, filed in the district court on October
13, 1992, was sent to us at our request on February 18, 1993.

Accountant. Over the years, she successfully had taken at least

ten different tests required for promotion and always had

received above average evaluations in her performance reviews as

a temporary employee. She never received a reprimand. Prior to

this lawsuit, plaintiff had filed 77 applications for promotion

to supervisory positions, with no success.3 Subsequent to the

filing of this action in 1988, she applied for the position of

Supervisor of Consumer Services. The position was filled by a

native Puerto Rican with seven months of employment by PREPA and

a B.S. degree in marine biology.

Statistical data of various kinds were introduced at trial.

Of some 10,700 employees in PREPA, 100 were in executive

positions and 2,400 in managerial positions. All employees in

the former group were born in either Puerto Rico or other parts

of the United States; in the latter group, there were five

persons of Dominican origin occupying what the court

characterized as "highly technical" supervisory positions in the

field. There were six other CPA's in PREPA. All were born in

3 This figure is used by the district court. In her
testimony, plaintiff listed 92 separate applications between 1980
and 1989.
PREPA's regulations governing appointment to managerial
level positions state:
The interested supervisor selects the one that he/she
considers to be the best candidate in accordance to
the effective norms and in accordance to the following
priority order:
...
a) Regular and temporary managerial employees with one or
more years of service with the authority.
b) Non-Regular employees.
c) Candidates from the Registry of Eligibles.

-3-

Puerto Rico and held jobs ranging from Executive Director to

Auditor.

The district court began its legal analysis by rejecting

PREPA's contention that plaintiff's evidence had to be assessed

under disparate impact principles -- i.e., as proof that a

facially neutral practice had a significant discriminatory impact

on applicants for promotion who were of Dominican origin as

compared with applicants of U.S. (including Puerto Rico) origin.

PREPA argues that the court erred in that ruling, claiming that

plaintiff challenged a specific, facially neutral practice, i.e.,

"grooming" allegedly less qualified persons by placing them

temporarily in desirable positions and then ultimately appointing

them permanently based on their temporary experience. PREPA

further argues that plaintiff failed to sustain this challenge

because she relied on statistical data, compiled by herself, that

provided no comparison with the relevant pool of eligibles, as

required by Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 650-

52 (1989).

There is some surface plausibility to this argument but on

reflection we reject it. While a practice of hiring or promotion

allowing considerable room for subjective judgment can be subject

to disparate impact analysis, Watson v. Ft. Worth Bank & Trust,

487 U.S. 977, 990 (1988), "grooming" was merely one of the

justifications advanced by PREPA for its actions. The gist of

plaintiff's claim was that, try as hard as she might, she was

always turned down in favor of U.S.-Puerto Rico born persons --

-4-

for varying and pretextual reasons having nothing to do with her

performance or qualifications. It was the discriminatorily

motivated treatment of her that she sought to demonstrate by her

data, which did not purport to be a broad statistical analysis

but rather a distillation and summary of her analysis of the

personnel records of all those who were chosen instead of her.4

As is well recognized, either a disparate impact or

disparate treatment analysis may be applied to any given case.

Teamsters v. United States, 431 U.S. 324, 336 n.15 (1977). This

case seems to us, as it did to the district court, more suited to

disparate treatment analysis, where the plaintiff must make out a

prima facie case of discrimination, the employer must then come

4 Plaintiff's testimony on her methodology was the
following:

Q So you did not study the general
population of all the persons that were
competing with you in all the positions that
you requested in PREPA during the years in
controversy?

A No because what I did was conduct a study
of the persons to whom positions were awarded
not the persons who were competing, that
would be another study. (Trans., Vol. IV, at
153-154.)

...

Q Do you have any evidence that any of these
persons that are born outside Puerto Rico or
that are not U.S. citizens were discriminated
against by PREPA?

A On that list there is only, as far as I
know I am the only one that has been
discriminated against as to the others I
don't know. (Trans., Vol. IV, at 159.)

-5-

forward with some non-discriminatory justification, and the

plaintiff finally is given the opportunity to convince the trier

of fact that the justification was pretextual and that the real

reason was discriminatory. Texas Dep't of Community Affairs v.

Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 802-05 (1973). This being the case, the

sophisticated statistical comparisons between the impact on a

victim class and that on non-victim class eligibles in the

relevant labor pool, as required by Wards Cove, are unnecessary.

In reviewing the district court's rulings in this genre of

case, we give plenary review to its conclusion as to whether

plaintiff has made out a prima facie case and "clearly erroneous"

review to any ultimate finding of discriminatory intent. EEOC v.

Metal Service Co., 892 F.2d 341, 345 (3rd Cir. 1990). We

conclude that the district court correctly identified and

executed the three-pronged inquiry required.

The court first found present the elements constituting a

prima facie case. Plaintiff's status as a person of Dominican

Republic origin was clear.5 That she was qualified was well

established. That she repeatedly was rejected and those of U.S.

origin promoted also was not disputed. The court, referring to

plaintiff's 77 rejections, to the status of the other six CPA's,

5 Although PREPA claimed in its brief that there was no
evidence that the supervisors making the decisions on plaintiff's
applications knew she was a Dominican national, counsel for
appellee represented without contradiction at oral argument that
such knowledge was never at issue and that, in any event,
plaintiff's personnel record and the records of others were in
evidence and clearly showed the employees' places of birth.

-6-

and to plaintiff's final rejection as Supervisor of Consumer

Affairs in favor of someone with less job experience and

education, found the prima facie case of intentional

discrimination established. At the conclusion of plaintiff's

case, the court denied PREPA's motion to dismiss.

The court then turned to PREPA's proffered business reasons

for rejecting plaintiff. It earlier had recognized that the

employer's burden was "not one of persuasion but of production of

a legitimate reason" and that, as to plaintiff's ultimate burden

to prove pretext and the more likely motivation of a

discriminatory reason, "the issue is one of credibility that the

trier of fact will determine." PREPA advances the argument that

"defendant established legitimate business reasons for not

awarding the management positions to plaintiff. The plaintiffs

did not rebut such proof showing that those reasons were a

pretext." In arguing in this manner, PREPA completely misses the

point that this was a bench trial and that the district court was

not merely passing on the facial adequacy of the employer's

justification but had to make credibility judgments and pass on

the genuineness of PREPA's reasons and on the presence or absence

of a discriminatory motive.

As the Supreme Court has said in U.S. Postal Serv. Bd. of

Governors v. Aikens, 460 U.S. 711, 714-15 (1983) (footnote

omitted),

But when the defendant fails to persuade the
district court to dismiss the action for lack of a
prima facie case, and responds to the plaintiff's proof
by offering evidence of the reason for the plaintiff's

-7-

rejection, the factfinder must then decide whether the
rejection was discriminatory within the meaning of
Title VII. At this stage, the McDonnell-Burdine

presumption "drops from the case," 450 U.S., at 255, n.
10, and "the factual inquiry proceeds to a new level of
specificity." Id., at 255.

. . .

The district court has before it all the evidence it
needs to decide whether "the defendant intentionally
discriminated against the plaintiff." Burdine, supra,

at 253.

The district court proceeded to identify each reason

advanced by the employer, subjected it to critical analysis, and

then evaluated their cumulative weight. It first noted PREPA's

initial position that, among the 77 positions applied for by

plaintiff, there were eight for which she was unqualified. But

it observed that there was no such claim as to the remaining 69

positions. Then the court noted PREPA's argument that she was

turned down for the position of Supervisor of Consumer Services

in Training because, as Clerk of Consumer Services in Training,

she was already performing the tasks required of a supervisor.

As to this, it commented, not unfairly we think, that the

argument was "disingenuous." Opinion at 14.

Another PREPA justification was that the limited

availability of managerial jobs meant that there was inevitable

underutilization of certain employees. This did not impress the

court as a suitable explanation for the uninterrupted series of

rejections of plaintiff in favor of less qualified employees.

Another of PREPA's positions was that managerial positions were

awarded to employees with experience in the job. The court

reasoned:

-8-

The record does not bear this assertion. Rather, the
record discloses a practice of grooming individuals by
placing them temporarily in the position they were
ultimately selected for as a means of facially
satisfying the experience requirement.

Opinion at 16.

Still another PREPA witness's reason for not acting

favorably on one of plaintiff's applications, not specifically

cited by the court, was that her acquisition of a CPA license

indicated that she soon would seek greener pastures elsewhere.

This conclusion, remarkable when applied to one who for 17 years

had made every attempt to improve her position within the agency

and laboriously had qualified in a discipline relevant to the

agency's accounting and auditing functions, was based on one

experience with a supervisor who, on receiving a law degree, had

left to practice law.

Two other factors are relevant to the issues of pretext and

intentional discrimination. One is the established fact that all

of plaintiff's performance review evaluations had been above

average and that in 17 years there had been no reprimands. In

other words, the court on this record could exclude the

possibility that either quality of performance or personality

defects legitimately could have played a part in PREPA's

decisions. The fact that many supervisors joined in these

recommendations over time, under these circumstances, could have

been looked upon as corroborative of some hidden, unannounced

practice. Cf. EEOC v. Metal Service Co., 892 F.2d at 350.

-9-

The second factor is that, although PREPA's Affirmative

Action Plan requires a statement of reasons to be made a part of

an employee's personnel file when such employee is rejected for

promotion, no such statement ever was made. We would have

expected that at some point in this attenuated history of

frustration some supervisors would have noted the bases for their

adverse decisions. This seems to be an example of the type of

case where "courts continue to express distrust, even in white-

collar jobs, for selection criteria that are unstructured and

where the overwhelming number of selectors or testers are white

or male [i.e., putative discriminators]." B. Schlei & P.

Grossman, Employment Discrimination Law 25 (2d ed. 1983) (1987-89

Supp.)

The district court's ultimate finding was that from the

facts and the inferences drawn from PREPA's "silence and/or

fanciful explanations is that failure to select [plaintiff] for

77 managerial positions responds [sic] to a pattern of

intentional discrimination on the basis of her nationality."

Opinion at 16-17. We conclude, based on all the factors we have

cited, that this judgment was not clearly erroneous, indeed, far

from it.

In so concluding, we note that even if the employer has met

its burden of articulating a nondiscriminatory business reason,

the trier of fact may consider the prima facie case plus the

cross examination of defendant and arrive at a supportable

determination of discrimination. Burdine, 450 U.S. at 255 n.10.

-10-

Our own jurisprudence makes it clear that there is no absolute

rule as to the necessary composition of sufficient evidence of

discrimination and that we look to the evidence as a whole.

Goldman v. First Nat'l Bank of Boston, No. 92-1773, slip op. at 8

(1st Cir. Feb. 18, 1993); Lawrence v. Northrop Corp., 980 F.2d

66, 69-70 n.1 (1st Cir. 1992); Connell v. Bank of Boston, 924

F.2d 1169, 1172 n.3 (1st Cir. 1991). More particularly,

depending on the facts, the making of a prima facie case together

with evidence of pretext may raise an inference of

discrimination. There is no absolute rule that a plaintiff must

adduce additional evidence. Samuels v. Raytheon Corp., 934 F.2d

388, 392 (1st Cir. 1991); Villanueva v. Wellesley College, 930

F.2d 124, 128 (1st Cir. 1991).6

The instant case fits this prescription. Not only is there

plaintiff's history of repeated failed efforts rivaling those of

Sisyphus, but the variety of reasons offered by defendant do not

withstand scrutiny and have nothing to do with competence,

character, or personality. Nor was there any contemporaneous

explanation of the rejections. We cannot fault the district

court for finding a pattern of intentional discrimination.

We have not overlooked PREPA's claims that the court erred

in excluding certain evidence and in allowing plaintiff to reopen

6 Although a panel in one earlier case took the position
that additional evidence of discrimination must be forthcoming,
see Olivera v. Nestle Puerto Rico, Inc., 922 F.2d 43, 48 (1st

Cir. 1990), a majority of that panel since has taken the position
articulated in Connell and Villanueva, which we believe now

represents the law of the circuit.

-11-

her direct examination. We have reviewed these rulings in the

context of the entire trial and do not find reversible error.

Affirmed.

-12-