Edwina SAMUELS, Plaintiff, Appellant,

v.

**RAYTHEON CORPORATION,**
Defendant, Appellee.

No. 90–1892.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1991.
Decided June 6, 1991.

Regina L. Quinlan with whom Quinlan & Smith was on brief, for plaintiff, appellant.

Willard Krasnow with whom Alfred C. Phillips was on brief, for defendant, appellee.

Before CAMPBELL and SELYA, Circuit Judges, and POLLAK,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Edwina Samuels appeals from the district court's judgment in favor of defendant Raytheon on Samuels' employment discrimination claim and from the court's denial of her motion to amend the judgment pursuant to Fed.R.Civ.P. 52(b) and 59. Because we believe that the district court's finding that Raytheon did not discriminate against Samuels on the basis of her sex and race when it refused to reinstate her was not clearly erroneous, we affirm the judgment of the district court.

## I.

In September, 1977, Edwina Samuels, a black woman, applied for employment as a security guard at Raytheon Company's facility in Waltham, Massachusetts. She was hired following an interview with the Chief of Plant Protection, James Oteri and began work as a security guard on September 19, 1977. After successfully completing her probationary period, she became a member of the Raytheon Guards Association and was covered by their Collective Bargaining Agreement.

On January 6, 1978, while on duty, the plaintiff was injured when a gate fell on her. Following the accident, Samuels requested and was granted a medical leave of absence, initially until March 20, 1978. Raytheon granted her an extension of the medical leave until April 3, 1978, but advised Samuels that further extensions could not be granted unless the Medical Department conducted a physical examination. Dr. Alphas, Raytheon's Medical Director, examined the plaintiff on April 14th and determined that Samuels could perform the sedentary duties of a security guard.

---

* Of the Eastern District of Pennsylvania, sitting by designation.

Following Dr. Alphas' examination, the Industrial Relations Manager wrote to Samuels, advising her that she should report to work on April 24th. When she failed to report, she was suspended and given until May 10th to offer reasons as to why she should not be terminated in accordance with Section 8.4(b)(viii) of the Collective Bargaining Agreement for failure to report to work following the expiration of a leave of absence.[1] The May 10th deadline was extended until May 19th; Samuels submitted an undated response sometime after May 19th but prior to July 7th. On July 7, 1978, by letter from Chief Oteri, Samuels was advised that she was terminated for failure to report to work upon expiration of her leave of absence.

Samuels' pay was discontinued as of the date of her accident, and she filed a claim with the Massachusetts Industrial Accident Board ("IAB") for worker's compensation. Although Commissioner Donovan of the IAB initially declined to order payment, the Reviewing Board later affirmed Commissioner Roberts' March 31, 1981 determination that Samuels was totally disabled from gainful employment from January 6, 1978 to June 30, 1979 and partially disabled for a period thereafter. The insurer, Liberty Mutual Insurance Company, was ordered to pay the plaintiff the appropriate statutory benefits for total and partial incapacity under Massachusetts law. Mass.Gen.L. ch. 152. Liberty Mutual did not seek judicial review of the IAB decision.

Following the IAB decision in Samuels' favor, the union filed a grievance on her behalf, seeking her reinstatement to a leave of absence status.[2] A grievance hearing was held on July 15, 1982. Samuels, the president of the Raytheon Guards Association, and two other union officials appeared for the union. Chief Oteri appeared for the company. Senior Labor Relations Specialist Dennis Austin heard the grievance and made the decision with respect to it. At the hearing, Samuels presented the two-page Findings and Decision of the Reviewing Board for the IAB. On July 16, 1982, Austin issued a decision denying the grievance for the following reasons:

(a) The grievant filed the grievance in flagrant and wanton violation of the grievance procedures requirement for prompt filing. The grievance was filed 4½ years after the grievant was terminated and

Secondly, as established by the testimony and evidence presented at the hearing, the grievant refused to return to work. The grievant was properly terminated pursuant to 8.4.

Samuels filed this action against Raytheon Company on September 26, 1983. In her First Amended Complaint, Samuels alleged that the termination of her employment by the defendant on July 7, 1978 and the subsequent refusal of the defendant to reinstate her on July 16, 1982 violated both title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Massachusetts civil rights laws, Mass.Gen.L., ch. 12, § 11I. On February 7, 1984, Raytheon moved to dismiss the plaintiff's complaint on the grounds that she had failed to file a timely complaint with the Equal Employment Opportunity Commission ("EEOC"). The district court granted the motion to dismiss with respect to her original termination claim; however, the court refused to dismiss the reinstatement claim, concluding that the failure to reinstate could constitute a separate actionable incident of discrimination and that Samuels' September 17, 1982 filing with the EEOC was timely with respect to that claim. On October 13, 1988, the defendant filed a motion for summary judgment. The district court denied the motion, finding that there was a genuine issue of material fact as to whether Raytheon's denial of Samuels' reinstatement petition violated title VII. The court granted summary judgment on the Massachusetts state law claims.

---

1. Section 8.4(b)(viii) of the collective bargaining agreement between Raytheon and the Raytheon Guards Association provides that "a guard ... shall be terminated if: ... (viii) he fails to return upon expiration of leave of absence."

2. Samuels was eight months pregnant when she filed her grievance; therefore, she did not seek reinstatement to active status at that time.

The case was tried without a jury in August, 1989. On December 28, 1989, the district court issued its Findings of Fact and Conclusions of Law. The court found that "nothing about the hearing before Dennis Austin, or in his findings, [ ] warrant a conclusion that discrimination took place by reason of sex or race" and that "denial of plaintiff's grievance seeking reinstatement did not provide the basis for a violation of Title VII." The district court directed that judgment enter in favor of the defendant. The plaintiff subsequently filed a motion to amend the judgment pursuant to Fed.R.Civ.P. 52(b) and 59. This motion was denied following a hearing and Samuels filed this appeal from the judgment and from the denial of her motion to amend the judgment.

## II.

■ As an initial matter, we must consider whether Samuels' complaint is barred by the statute of limitations. She concedes that her claim based on her original termination is time-barred; however, she argues that Raytheon's refusal to reinstate her following the IAB finding constituted a separate actionable event under title VII. Under certain circumstances, an employer's refusal to reinstate an employee who has been terminated may constitute a separate incident of discrimination under title VII. *See, e.g., Jensen v. Frank,* 912 F.2d 517 (1st Cir.1990) (defining serial violation as "a number of discriminatory acts emanating from the same discriminatory animus"); *Poolaw v. City of Anadarko,* 660 F.2d 459 (10th Cir.1981) (finding that a plaintiff's allegation that his posttermination treatment was discriminatory was a claim separate and distinct from his allegation of discriminatory discharge).

■ Here, the finding of the IAB provided new information concerning the correctness of the original termination and served as a basis for Samuels' request for reinstatement. Raytheon conducted a hearing to reevaluate its original decision. Were Samuels able to establish the existence of unlawful bias in Raytheon's hearing process or in Austin's decision, Raytheon's re-

fusal to reinstate her might provide a separate, actionable event under title VII. We shall assume, therefore, without necessarily finding, that Samuels' claim was not time-barred. We turn, therefore, to her allegations of bias regarding Raytheon's refusal to reinstate her.

The Supreme Court has articulated a three-step burden-shifting analysis to be applied in the context of disparate treatment employment discrimination cases. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). In cases such as this, where there is no direct evidence of discrimination, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a nondiscriminatory justification for its decision. When that burden is met, the plaintiff must then produce evidence that the defendant's reasons "were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

We shall assume, as did the district court, that the plaintiff established a prima facie case under the *McDonnell Douglas* formulation. As its legitimate, nondiscriminatory reason for refusing to reinstate the plaintiff, Raytheon cited the plaintiff's failure to return to work after the Medical Department found her fit to resume her duties as a security guard. Samuels challenges Raytheon's articulated reason for its refusal to reinstate her. She argues that, given the IAB's subsequent finding that she was disabled at the time of her discharge, Raytheon could not legitimately continue to rely on Dr. Alphas' opinion that she was capable of returning to work. She insists that, within the *McDonnell Douglas* framework, she has demonstrated Raytheon's reason to be pretextual and is entitled to judgment as a matter of law because the presumption of discrimination

arising from her prima facie case has not been rebutted.

██ · The plaintiff's argument misconstrues both the workings of the *McDonnell Douglas* formulation and the relationship of the IAB decision to the issue of discrimination. As this court recently explained in *Villanueva v. Wellesley College*, 930 F.2d 124 (1st Cir.1991):

> Depending on the facts and circumstances of each case, the original prima facie case plus the evidence of pretext may suffice to raise an inference of discrimination, or additional evidence may be required. There is no absolute rule that a discrimination plaintiff *must* adduce evidence in addition to that comprising the prima facie case and the rebuttal of defendant's justification in order to prevail either at the summary judgment stage or at trial.

At 128. Even assuming the original prima facie case plus the evidence of pretext suffices to raise a reasonable inference of discrimination, this does not automatically entitle the plaintiff to judgment. Provided a contrary inference (of nondiscrimination) might also reasonably be drawn from the evidence, such a showing only creates an issue of material fact for trial and, if discrimination is subsequently found, will support that finding.

██ Here the IAB found that, under Massachusetts law, Samuels was disabled at the time of her discharge and hence entitled to receive workers' compensation. This finding of the IAB obviously conflicted with Dr. Alphas' finding. This conflict raises the issue of the correctness of Dr. Alphas' original conclusion, and also suggests that Raytheon's decision to stand by Dr. Alphas' original decision and deny reinstatement may have been incorrect and, possibly but not necessarily, even in bad faith. However, the Board's finding does not *compel* the conclusion that the reason articulated by Raytheon for its denial of Samuels' request for reinstatement was presented in bad faith, was knowingly

false, or was a pretext for discrimination. Raytheon contested the disability claim before the IAB, and while it lost out on the issue of benefits before that tribunal, it may have continued to believe its own doctor's opinion that Samuels could return to work.

██ The district court properly analyzed the matter by denying Raytheon's motion for summary judgment and sending the case to trial. In so doing, the court sensibly determined that the IAB's disability finding had raised a question of triable fact as to whether Raytheon's decision not to reinstate the plaintiff was actually based on its continuing belief in the validity of Dr. Alphas' original determination or, instead, on illegal racial or gender bias. A bench trial was thereupon held. At trial, the plaintiff attempted to establish discrimination on the part of Raytheon in its refusal to reinstate her. Alleging discriminatory treatment, Samuels noted that no other employee terminated for refusing to return from a leave of absence had been refused reinstatement following a favorable ruling by the IAB. However, she presented no evidence that a similar situation had ever arisen, much less that other employees had been treated more favorably. At trial, Dr. Alphas testified that, based upon his examination of Samuels in April, 1978, he believed that she was capable of performing the duties of a security guard. Dennis Austin, the Labor Relations Specialist presiding at the grievance hearing, testified that, after considering the conflicting opinions as to Samuels' disability, he credited Dr. Alphas' opinion over the finding of the IAB because "our doctor knows the job description and made the examination." Based on the evidence presented at trial, the district court concluded that "nothing about the hearing before Dennis Austin, or in his finding, [ ] warrants a conclusion that discrimination took place by reason of sex or race." Under the standard prescribed under Fed.R.Civ.P. 52(a),[3] we cannot say

---

3. Fed.R.Civ.P. 52(a) provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

that the district court's finding was clearly erroneous.

 On appeal, Samuels has not argued that the district court erred in its interpretation of the evidence presented at trial. Rather, she bases her argument on her mistaken view of how the *McDonnell Douglas* burden-shifting framework should have worked. In effect, Samuels argues that no fact-finding was ever called for since, had the IAB ruling been given its proper preclusive effect, she would have been entitled to prevail as a matter of law. But the IAB ruling was not preclusive on the issue of discriminatory intent. Even if the district court had concluded that Samuels was disabled at the time of her termination, that Raytheon mistakenly terminated her, and that the company's continued reliance on Dr. Alphas' opinion was misguided, it could still reasonably conclude that Raytheon's decision to deny Samuels' request for reinstatement was made in good faith and was not based on racial or gender bias.[4] It was for the fact finder to determine the defendant's true motivation. Finding no clear error, we affirm the district court's entry of judgment in favor of the defendant Raytheon.

 We also agree that the district court correctly denied Samuels' motion to amend the judgment under Rules 52(a) and 59. Samuels focuses on the district court's characterization of the issue as "whether the plaintiff has carried the burden of proving that her termination was due to discrimination." She insists that her claim involved allegations of discrimination in Raytheon's refusal to reinstate her, not in the original termination. Although we acknowledge that the district court's statement of the issue focuses perhaps inaccurately on the original termination, it is clear from the remainder of the findings of fact and conclusions of law that the court gave careful and complete consideration to the issue of reinstatement. The factual findings of the district court are fully adequate

to meet the requirements of Fed.R.Civ.P. 52(a) that the court "find the facts specially and state separately its conclusions of law thereon."

*Affirmed. Costs to appellee.*

---

4. Because the IAB ruling did not address the issue of discrimination, we need not determine the preclusive effect, if any, of that decision. Even if the IAB finding were deemed binding in this action on the issue of disability, such a finding would not require judgment for the plaintiff.