**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSHUA LIAM JOSEPHS, aka Joshua
Liam Joesphs, Joshua Liam
Josepths,
                *Plaintiff-Appellee,*

    v.

PACIFIC BELL,
                *Defendant-Appellant,*

    and

DOES, 1-30, inclusive,
                *Defendants.*

No. 03-56412

D.C. No.
CV-99-00843-RMB

ORDER
AMENDING
OPINION AND
AMENDED
OPINION AND
AMENDED
DISSENT

Appeal from the United States District Court
for the Southern District of California
Rudi M. Brewster, District Judge, Presiding

Argued and Submitted
March 10, 2005—Pasadena, California

Filed December 27, 2005
Amended April 10, 2006

Before: Edward Leavy, Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Leavy;
Dissent by Judge Callahan

**COUNSEL**

Richard A. Paul, Paul, Plevin, Sullivan & Connaughton, LLP, San Diego, California, for the defendant-appellant.

Reza Keramati, Western Legal Group, San Diego, California, for the plaintiff-appellee.

**ORDER**

The Opinion filed December 27, 2005, and appearing at 432 F.3d 1006 (9th Cir. 2005), is hereby amended, as follows:

1. On slip opinion page 16708, and appearing at 432 F.3d 1014, the heading "a. *Equitable Tolling*" and the following five paragraphs are deleted and the following heading and paragraphs substituted:

    a. *Equitable Exception*

An individual plaintiff must first file a timely EEOC complaint against the allegedly discriminatory party before bringing an ADA suit in federal court. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). Because California is a "deferral" state, the claim must be filed within 300 days of the claimed event of discrimination. 42 U.S.C.A. § 2003e-5(e) (2003). The filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to filing suit, but is a requirement subject to equitable doctrines such as waiver

and tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982).

An equitable exception to the exhaustion requirement is available when an EEOC representative misleads the plaintiff concerning his claim. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 901-02 (9th Cir. 2001). Such relief may be granted to a plaintiff who:

> (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time.

*Id.* at 902.

While Josephs' EEOC claim was not filed within 300 days of his termination, these factors all favor the application of an equitable exception to the EEOC claim. Josephs diligently pursed his claim by going to the EEOC office shortly after his termination. He was pro se at the time and was misled by the EEOC representative, Holmes, who told Josephs that he needed to retain counsel before filing a claim. Following the advice of Holmes, Josephs retained counsel, but by the time the EEOC responded to counsel's inquiries, the time for filing the claim had expired.

PacBell argues that Josephs' affidavit, which describes his dealings with the EEOC, is a "self-serving" statement that cannot form the basis for an equitable exception. We rejected an identical argument in *Rodriquez*: "self-serving affidavits are cognizable . . . so long as they state facts based on personal knowledge and are not too conclusory." *Id.*

Therefore, the district court did not abuse its discretion in finding an equitable exception to the exhaustion requirement for Josephs' EEOC complaint.

2. On slip opinion page 16712-13, and appearing at 432 F.3d 1016-17, the paragraph beginning with "PacBell's final argument" is deleted and the following paragraphs substituted:

PacBell's final argument challenges the jury's finding that Josephs was qualified for the service technician position. PacBell argues that Josephs' past violent acts made him unqualified for the position, while the dissent asserts that, in assessing his qualifications, the jury had no opportunity to consider Josephs' potential dangerousness to PacBell customers. As a preliminary matter, we note that the ADA allows an employer to adopt a job qualification standard that an individual not pose a direct threat to the health or safety of others in the work place. *See* 42 U.S.C. § 12113(b) (2005); 29 C.F.R. § 1630.2(r) (2005); *see also*, *Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1258-59 (9th Cir. 2001). Therefore, unquestionably, PacBell properly required that its service technicians be safe in customers' homes. PacBell does not complain on appeal that it was prevented from presenting whatever evidence it deemed relevant on the subject of Josephs' qualifications, including its perception that he might be a danger to customers. It is a factual question for the jury whether PacBell's perception was unfounded. *See Senger v. United States*, 103 F.3d 1437, 1443-44 (9th Cir. 1996) (issue of fact for jury whether an employee's dangerousness could be foreseen). The issue for us to decide is only whether the jury's finding that Josephs was, in fact, not dangerous, is supported by the record.

As detailed above, Question 3 of the special verdict form asked: "Was plaintiff a qualified individual who could satisfy the requisite skill, experience, education, and other job-related requirements of the Service Technician position?" The jury

answered "Yes." When answering Question 3 affirmatively, the jury knew that customer contact, in customers' homes, was an important and integral function of the Service Technician position; trustworthiness in that context was a basic qualification for the job. Before making its determination that Josephs was qualified, the jury was instructed that an employer may take into account a past history of violence in making employment-related hiring decisions.

Josephs did not come to work for PacBell until about 16 years after his violent act, about 15 years after his plea of not guilty by reasons of insanity, and about 12 years after his release from a mental institution. The jury knew that, before being hired by PacBell, Josephs worked successfully for Cox Communications for a decade; as a Repair Service Technician for Cox, he entered thousands of customers' homes without incident. The jury knew that Josephs performed his job duties well at PacBell, too. The jury heard Maches' testimony that Josephs was performing well on the job and that Maches considered Josephs a potential asset to PacBell. When the jury found that Josephs was "qualified" and that he satisfied all "job-related requirements," it necessarily found that he could be trusted in customers' homes and was presently mentally stable, not dangerous.

The jury also heard evidence that PacBell was willing to assess present dangerousness objectively when the employee was not mentally ill or perceived to be so. For example, the jury heard evidence that PacBell had reinstated one service technician who had a felony domestic violence conviction.

It is undisputed that, if a person *were* in fact untrustworthy or dangerous in customers' homes, for whatever reason, the person would *not* be qualified. The jury simply found, based on the evidence, the Josephs was, in fact, safe and qualified,

and that PacBell's fears were objectively unreasonable and based on a discriminatory, incorrect assumption.[5]

3. On slip opinion pages 16714-15, and appearing at 432 F.3d 1018, the three consecutive paragraphs beginning with "PacBell first argues" are deleted and the following substituted:

PacBell first argues that the district court "gave only the first part of the mixed motive instruction, imposing liability if plaintiff's 'regarded as' disability was 'a motivating factor,' without including the second part — in effect defendant's affirmative defense [that it would have terminated plaintiff for other reasons anyway]."[7] PacBell asserts that these instructions violate Supreme Court precedent in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074, *as recognized in Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003).

In *Price Waterhouse*, the Supreme Court set forth the "respective burdens of proof of a defendant and plaintiff in a suit under Title VII when it has been shown that an employment decision resulted from a mixture of legitimate and illegitimate motives." *Id.* at 232. The Supreme Court rejected the defendant's argument that the statute required the plaintiff to show "but-for causation" for the employment decision, holding that the plaintiff could meet her burden of proof by simply showing that the employer "relied upon sex-based considerations in coming to its decision." *Id.* at 242. The defendant then had

---

[5]PacBell also argues that employers are entitled to protect themselves against potential liability from a negligent hiring claim if an employee commits a violent act against a customer. Requiring employers to rely on facts rather than stereotypes does not undermine employers' ability to hire only fully qualified people.

[7]We recently decided that "the ADA causation standard is a motivating factor standard." *Head v. Glacier N.W., Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005).

an affirmative defense if it could prove that "even if it had not taken gender into account, it would have come to the same decision regarding a particular person." *Id.* Thus, "once a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." *Id.* at 244-45 (footnote omitted).

Here, while the jury instructions included the term "motivating factor," that term, as defined in the instructions, required Josephs to show "but-for" causation. The jury was specifically told that "a motivating factor" was "something that moves the will and induces action." In addition, the jury was instructed that Josephs had to prove that PacBell would not have made the same decision **but for** his "regarded as" disability. Therefore, Josephs had a heavier burden of proof than that required by *Price Waterhouse*. Moreover, in rendering a verdict for Josephs, the jury necessarily decided that PacBell would not have refused to reinstate Josephs for other reasons.

The amended Opinion will be filed concurrently with this Order.

With the Opinion as amended, Judges Leavy and Graber have voted to deny the Petition for Rehearing, Judge Graber has voted to deny the Petition for Rehearing En Banc, and Judge Leavy so recommends. Judge Callahan has voted to grant the Petition for Rehearing and Petition for Rehearing En Banc.

The full court has been advised of the Petition for Rehearing En Banc and no Judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The Petition for Rehearing and the Petition for Rehearing En Banc are denied.

No further petitions for rehearing or for rehearing en banc will be entertained by this court.

## OPINION

LEAVY, Circuit Judge:

In this appeal we must resolve issues arising from the employment discrimination action brought against Pacific Bell Telephone Company (PacBell) by a former service technician, Joshua Liam Josephs. After the jury rendered a verdict for Josephs on his claim alleging that PacBell's decision to deny him reinstatement violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq.* (ADA), and the California Fair Employment and Housing Act, CAL. GOV'T CODE § 12940 (FEHA), the district court entered judgment against PacBell. PacBell now appeals on grounds that the district court erred in failing to grant it judgment as a matter of law or a new trial. PacBell also contends that the district court made two erroneous evidentiary rulings and two errors in jury instructions. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the judgment.

## BACKGROUND

In late 1997, Josephs applied for a service technician position with PacBell. Service technicians perform unsupervised, in-home telephone installation or repair. Josephs had been employed for ten years in a similar position with Cox Communications. Josephs checked "NO" in answer to PacBell's employment application question, "Have you ever been convicted of, or are you awaiting trial for a felony or misdemeanor?" He was hired for the position in January 1998.

Under California Penal Code § 11105(c)(9), PacBell is authorized to obtain the detailed criminal history of employ-

ees who will have unsupervised access to customers' homes. After Josephs had been working for approximately three months, PacBell obtained his criminal history. Following some initial internal confusion as to the contents of the report, PacBell determined that Josephs had been arrested in 1982 for attempted murder and was found not guilty by reason of insanity, and that Josephs had been convicted in 1985 for a 1982 misdemeanor battery on a police officer.

PacBell suspended Josephs pending further investigation. It confirmed the charge of attempted murder, the finding of not guilty by reason of insanity, and the 1985 misdemeanor conviction. PacBell also learned that Josephs had been committed to and had spent two and one-half years in a California state mental hospital between 1982 and 1985, then spent six months in a board-and-care mental health facility, was released from parole on July 30, 1986, and had changed his name following his release.

Josephs' immediate supervisor at PacBell, Steve Maches, testified at trial that during the suspension he had recommended Josephs be restored to his position because Josephs was performing well and would probably be an asset to Pac-Bell. However, Maches also testified that his supervisor, Robert Shive, told him that Shive wanted to eliminate the possibility of having someone in the business that had an "emotional dysfunction" that might cause "this type of behavior." Ultimately, PacBell notified Josephs on April 23, 1998, that he was discharged "due to fraudulent entries on your application, in that you attempted to withhold information concerning his [sic] past" and that "this was a willful attempt, and a direct violation of [PacBell's] Code of Conduct, which is not tolerated by long term employees as well as newly hired ones."

Josephs filed a grievance with PacBell seeking reinstatement of his employment. PacBell's collective bargaining agreement with the Service Technician's union provided for

a three-step grievance process. Linda Sexton, the union representative, testified at trial that at Step I, she was told that the reason for Josephs' termination was his failure to disclose his misdemeanor conviction and name change. She testified that during Step II, Jeff Smith, general manager for the San Diego labor force, expressed concerns about employing someone with Josephs' "background" to work in people's homes because he might "go off" on a customer. Sexton suggested that Josephs be given a different job at PacBell, such as a splicer, which didn't involve customer contact. Smith responded by stating "people can still walk by," and that "under the advisement of legal, . . . they were not going to bring someone like that back . . . they had an image to uphold." Sexton asked Smith whether Josephs could have his misdemeanor conviction expunged and be reinstated, as had happened with other PacBell employees. Smith did not answer.

Josephs' misdemeanor battery conviction was expunged a month before the Step III grievance proceeding. Sexton testified that she told Augie Cruciotti, a PacBell vice-president attending the Step III proceeding, of the expungement and argued that Josephs should be treated similarly to an employee who had been reinstated after his conviction was expunged. Cruciotti distinguished Josephs' situation, stating several times that, unlike the other employee, Josephs had spent time in a "mental ward," and that PacBell could not afford to have people out there who had been released from a mental institution. After the final Step III meeting, on November 23, 1998, Cruciotti denied reinstatement with no opportunity to reapply.

ADMINISTRATIVE PROCEEDINGS

On November 30, 1998, Josephs went to the Equal Employment Opportunity Commission (EEOC) office and completed paperwork to file a charge of discrimination. He was told by an EEOC employee, Ron Holmes, to have his

attorney contact the EEOC after he retained counsel. Holmes did not file a charge of discrimination on behalf of Josephs nor did he refer Josephs' case to the California Department of Fair Employment and Housing (DFEH). After Josephs retained counsel in February 1999, counsel unsuccessfully attempted to contact Holmes. In April 1999, counsel was informed by the EEOC's Raul Green that Holmes had retired without processing Josephs' paperwork, but that his complaint would be considered filed as of November 30, 1998. Josephs filed a complaint with DFEH on April 22, 1999.

The complaint filed with the EEOC describes Josephs' April 23rd termination, but not the grievance process. However, Josephs' supporting affidavit, also filed with the EEOC, describes PacBell's refusal to reinstate him. The complaint filed with DFEH alleges that Josephs was "terminated" because of a mental disability but does not discuss PacBell's refusal to reinstate him. Both the DFEH and EEOC issued Josephs right-to-sue notices without further investigation.

## DISTRICT COURT PROCEEDINGS

Josephs then brought this action claiming unlawful termination of employment and unlawful refusal to reinstate in violation of the ADA and FEHA based on allegations that PacBell both terminated and refused to reinstate him because they regarded him as mentally disabled. At trial, Josephs introduced, over the objection of PacBell, evidence of the statements made by Smith and Cruciotti during his grievance proceedings and evidence of PacBell's treatment of three other employees who, like Josephs, had been terminated for failure to disclose prior criminal convictions on their employment applications but, unlike Josephs, had been reinstated or offered a conditional reinstatement. One employee had a conviction for possession of marijuana with intent to sell, one had a petty theft conviction, and one had a felony domestic violence battery conviction.

Josephs' testimony at trial detailed his mental health problems leading up to the attempted murder and commitment to the state mental hospital, his treatment and recovery, and his employment with Cox Communications and PacBell. Cross-examination of Josephs focused on whether his mental health problems were caused by illegal drug use and whether he had intentionally lied on his PacBell application. Josephs also introduced his autobiography into evidence, which had been written during his stay in the state mental hospital and described his childhood and mental illness. Josephs had provided PacBell employees a copy of the autobiography during the grievance proceedings.

PacBell's in-house lawyer, Karen Haubrich, testified at trial that she believed that "somebody who has attempted to kill another individual should not be in a service technician position." While she testified that she had discussed this belief with Smith as she advised him during the Step II grievance process, she did not discuss with him whether Josephs, in particular, should be employed in a position with unsupervised access to customers' homes. Haubrich testified that she and Smith had discussed the fact that Josephs was properly terminated for failure to reveal the conviction or his name change on his employment application. According to Haubrich's testimony, when she advised Cruciotti during the Step III grievance process, their discussions focused primarily on Josephs' lack of honesty in his application.

On cross-examination, Haubrich admitted looking up and discussing with various PacBell employees news coverage of Josephs' 1985 release from the state mental hospital. This material included newspaper reports, introduced at trial, that Josephs had been under psychiatric care and counseling at the hospital and had been a "mentally disordered offender."

As framed by Josephs and PacBell in closing arguments, the determinative issue before the jury was whether PacBell refused to reinstate Josephs because it regarded him as having

a mental illness that might result in future acts of violence or because of the violent acts he had previously committed.

The jury was instructed that to render a verdict for Josephs on his claim for discrimination in the reinstatement process, it had to affirmatively answer four questions:

> 1.  Did Pacific Bell regard plaintiff as having a mental disorder at the time of his termination or non-reinstatement?
>
> 2.  Did Pacific Bell regard plaintiff as having a long-term mental disorder which substantially limited his ability to work in a broad range of jobs?
>
> 3.  Was plaintiff a qualified individual who could satisfy the requisite skill, experience, education, and other job-related requirements of the Service Technician position?
>
> . . . .
>
> 5.  Did Pacific Bell refuse to agree to reinstate plaintiff in the grievance settlement process because of his regarded as disability?[1]

The district court further instructed the jury that "[a]n employer may take into account a past history of violence in making employment-related hiring decisions." The district court also gave two mixed motive jury instructions:

Jury Instruction No. 27:

> The third element plaintiff must prove by a preponderance of the evidence is that the plaintiff's regarded as disability was a motivating factor in the

---

[1]Question 4 related solely to the discharge claim.

defendant's decisions to terminate and/or to not reinstate the plaintiff.

A motivating factor is something that moves the will and induces action even though other matters may have contributed to the taking of the action.

Jury Instruction No. 14:

It is not necessary for the plaintiff to prove that the plaintiff's regarded as disability was the sole or exclusive reason for the defendant's decision, but, plaintiff must prove that defendant would not have made the same decision but for the plaintiff's regarded as disability.

PacBell objected to the mixed-motive instruction as given, arguing that it should be followed by an instruction that "even if you find regarded as disability was a motivating factor, the employer will not be liable for the termination if it proves by a preponderance of the evidence that it would have terminated Plaintiff for other reasons anyway."

During its deliberations, the jury asked for clarification of the phrase "because of" in question 4, "Did Pacific Bell discharge plaintiff because of his regarded as disability?"[2] The jury stated: "We are struggling to determine if 'because of' is to be interpreted as 'the sole reason' or is it possible to be combined with other factors as we reach our decision of 'yes' or 'no.' " The district court referred the jury to Jury Instruction No. 27, stating that "the plaintiff must prove by a preponderance of the evidence that the plaintiff's 'regarded as' disability was a motivating factor in the discharge — a factor that moves the will and induces and determines the action,

---

[2]The same phrase occurred in question 5, "Did Pacific Bell refuse to agree to reinstate plaintiff in the grievance settlement process because of his regarded as disability?"

even though other matters may have contributed to the taking of the action."

The jury determined by special verdict that PacBell's termination of Josephs was nondiscriminatory. However, the jury determined that PacBell refused to reinstate Josephs because it regarded him as mentally disabled in violation of the ADA. The jury awarded Josephs compensatory damages. On April 30, 2003, PacBell moved for judgment as a matter of law and a new trial. The district court denied the motions, and PacBell timely appealed.

## ANALYSIS

### A.  *Judgment as a Matter of Law/New Trial*

PacBell contends that it was entitled to judgment as a matter of law because (1) a claim for discriminatory refusal to reinstate is not separately actionable under the ADA or FEHA; (2) Josephs had not exhausted administrative remedies with respect to his reinstatement claim; and (3) the evidence was insufficient to support the jury's findings that Josephs' "condition" was covered by the ADA, that this condition limited a major life activity, and that Josephs was qualified for the position of service technician.

### 1.  *Claim for Discriminatory Refusal to Reinstate*

PacBell argues that, under *Collins v. United Air Lines, Inc.*, 514 F.2d 594, 596 (9th Cir. 1975), a plea by an employee to be reinstated simply "seeks to redress the original termination" and is, therefore, not separately actionable. This is an issue of law that we review de novo. *Harper v. U.S. Seafoods*, 278 F.3d 971, 973 (9th Cir. 2002).

[1] *Collins* is distinguishable from the facts of Josephs' claim because "new elements of unfairness, not existing at the time of the original violation, attached to denial of re-

employment." *Inda v. United Air Lines, Inc.*, 565 F.2d 554, 561-62 (9th Cir. 1977). Here, Josephs asserted and the jury found that PacBell's denial of reinstatement was based on just such a "new element of unfairness," the perception that he was mentally ill. While *Inda* involved a denial of reemployment, rather than a failure to reinstate, its holding is not limited to a particular employment action.

**[2]** Therefore, we join the First, Third, Fourth, Tenth, and Eleventh Circuits and expressly recognize discriminatory failure to reinstate as a separately actionable claim. *See EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80 (4th Cir. 1995); *Samuels v. Raytheon Corp.*, 934 F.2d 388 (1st Cir. 1991); *EEOC v. Hall's Motor Transit Co.*, 789 F.2d 1011 (3d Cir. 1986); *Burnam v. Amoco Container Co.*, 755 F.2d 893 (11th Cir. 1985) (per curiam); *Poolaw v. City of Anadarko*, 660 F.2d 459 (10th Cir. 1981).

## 2. *Exhaustion of Administrative Remedies*

PacBell argues that Josephs did not exhaust the administrative remedies for his claim for refusal to reinstate because (1) equitable tolling is not applicable to Josephs' EEOC claim and (2) Josephs' DFEH charge, which was timely filed within a year of his dismissal,[3] and his EEOC claim both failed to mention refusal to reinstate. This court reviews for abuse of discretion the district court's decision to apply equitable tolling. *See Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003). Whether a plaintiff has exhausted required administrative remedies is a question of law, reviewed de novo. *See Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003).

---

[3]DFEH complaints must be filed within one year of the alleged discriminatory action. CAL. GOV'T CODE § 12960(d).

a.  *Equitable Exception*

**[3]** An individual plaintiff must first file a timely EEOC complaint against the allegedly discriminatory party before bringing an ADA suit in federal court. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). Because California is a "deferral" state, the claim must be filed within 300 days of the claimed event of discrimination. 42 U.S.C.A. § 2003e-5(e) (2003). The filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to filing suit, but is a requirement subject to equitable doctrines such as waiver and tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982).

**[4]** An equitable exception to the exhaustion requirement is available when an EEOC representative misleads the plaintiff concerning his claim. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 901-02 (9th Cir. 2001). Such relief may be granted to a plaintiff who:

> (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time.

*Id.* at 902.

**[5]** While Josephs' EEOC claim was not filed within 300 days of his termination, these factors all favor the application of an equitable exception to the EEOC claim. Josephs diligently pursed his claim by going to the EEOC office shortly after his termination. He was pro se at the time and was misled by the EEOC representative, Holmes, who told Josephs that he needed to retain counsel before filing a claim. Following the advice of Holmes, Josephs retained counsel, but by the

time the EEOC responded to counsel's inquiries, the time for filing the claim had expired.

PacBell argues that Josephs' affidavit, which describes his dealings with the EEOC, is a "self-serving" statement that cannot form the basis for an equitable exception. We rejected an identical argument in *Rodriquez*: "self-serving affidavits are cognizable . . . so long as they state facts based on personal knowledge and are not too conclusory." *Id.*

**[6]** Therefore, the district court did not abuse its discretion in finding an equitable exception to the exhaustion requirement for Josephs' EEOC complaint.

### b.   *Exhaustion of Reinstatement Claim*

**[7]** We construe charges filed before the EEOC and the DFEH liberally. *See Stache v. Int'l Union of Bricklayers & Allied Craftsmen*, 852 F.2d 1231, 1233 (9th Cir. 1988). "Subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.' " *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quoting *Farmer Bros. Co.*, 31 F.3d at 899).

**[8]** In *Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1082 (9th Cir. 2000) (per curiam), we held that a wrongful termination claim was encompassed in a failure-to-reinstate charge, stating that the termination is "unquestionably like or reasonably related to" the allegations of discrimination in the refusal to reinstate charge.[4] (Internal quotation marks omitted.) Here, Josephs' refusal-to-reinstate claim is similarly "un-

---

[4]Although *Couveau* involved an FEHA claim, the Ninth Circuit applied Title VII law in reaching its result and explained that, "[b]ecause California law under the FEHA mirrors federal law under Title VII, federal cases are instructive." 218 F.3d at 1082 n.4.

questionably" related to his termination claim. The same employer allegedly refused to reinstate Josephs for the same discriminatory reason that allegedly caused his termination. Any administrative investigation of his termination claim would have necessarily encompassed the grievance proceeding. Thus, Josephs exhausted his claim for discriminatory refusal to reinstate.

### 3.   *Sufficiency of the Evidence to Support the Judgment*

PacBell challenges the sufficiency of the evidence supporting the jury's findings that Josephs' "condition" was covered by the ADA, that his condition limited a major life activity, and that Josephs was qualified for the position of service technician.

We review de novo the district court's denial of a renewed motion for judgment as a matter of law. *See White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002), *amended by* 335 F.3d 833 (9th Cir. 2003). We must view the evidence in the light most favorable to the nonmoving party — here, Josephs, — and draw all reasonable inferences in that party's favor. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000). The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *See Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

**[9]** Under the ADA an employee is considered disabled if he is regarded by his employer as having a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(A) & (C). An individual falls within this definition if his employer "mistakenly believes that a person has a[n] . . . impairment that substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

**[10]** The term "mental impairment" is not defined in the ADA. *See* 42 U.S.C. § 12101. ADA regulations however, rec-

ognize that "mental impairments" are included within the term "disability," and indirectly define this phrase to include "[a]ny mental or physiological disorder, such as . . . emotional or mental illnesses." 29 C.F.R. § 1630.2(g)(2) & (h)(2) (2005).

**[11]** Here, Josephs claimed that PacBell regarded him as suffering from a mental illness that might result in future acts of violence. While it is true, as PacBell argues, that the California court's determination of legal insanity does not necessarily mean that Josephs suffered from a mental impairment covered by the ADA, the jury considered more than Josephs' criminal record and court documents. It heard evidence that PacBell employees considered Josephs unemployable because he had spent time in a "mental ward" and might "go off" on a customer. It considered newspaper reports that PacBell reviewed and discussed during the grievance proceedings, which included statements that Josephs was a "mentally disordered offender" who had been under psychiatric care. The jury read Josephs' autobiography, as had PacBell employees, which detailed his mental instability before his stay in the mental hospital. Thus, the jury had ample evidence to support its finding that PacBell regarded Josephs as having a mental impairment covered by the ADA.

**[12]** The jury found that PacBell regarded Josephs' mental disorder as substantially limiting his ability to work in a broad range of jobs. Under the ADA, when the "major life activity" that is "substantially limit[ed]" is working, the employee must be regarded as unable to work in a "class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The jury heard evidence that PacBell considered Josephs unfit for any job with the company. Maches testified that his supervisor told him the company wanted to "eliminate the possibility" of employing someone such as Josephs. When the union representative proposed that Josephs be offered a position that did not involve unsuper-

vised access to customers' homes, PacBell rejected the suggestion because "people can still walk by." This evidence amply supports the jury's finding that PacBell viewed Josephs as having a mental disability that "substantially limited" him in the "major life activity" of working.

PacBell's final argument challenges the jury's finding that Josephs was qualified for the service technician position. PacBell argues that Josephs' past violent acts made him unqualified for the position, while the dissent asserts that, in assessing his qualifications, the jury had no opportunity to consider Josephs' potential dangerousness to PacBell customers. As a preliminary matter, we note that the ADA allows an employer to adopt a job qualification standard that an individual not pose a direct threat to the health or safety of others in the work place. *See* 42 U.S.C. § 12113(b) (2005); 29 C.F.R. § 1630.2(r) (2005); *see also*, *Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1258-59 (9th Cir. 2001). Therefore, unquestionably, PacBell properly required that its service technicians be safe in customers' homes. PacBell does not complain on appeal that it was prevented from presenting whatever evidence it deemed relevant on the subject of Josephs' qualifications, including its perception that he might be a danger to customers. It is a factual question for the jury whether PacBell's perception was unfounded. *See Senger v. United States*, 103 F.3d 1437, 1443-44 (9th Cir. 1996) (issue of fact for jury whether an employee's dangerousness could be foreseen). The issue for us to decide is only whether the jury's finding that Josephs was, in fact, not dangerous, is supported by the record.

As detailed above, Question 3 of the special verdict form asked: "Was plaintiff a qualified individual who could satisfy the requisite skill, experience, education, and other job-related requirements of the Service Technician position?" The jury answered "Yes." When answering Question 3 affirmatively, the jury knew that customer contact, in customers' homes, was an important and integral function of the Service Techni-

cian position; trustworthiness in that context was a basic qualification for the job. Before making its determination that Josephs was qualified, the jury was instructed that an employer may take into account a past history of violence in making employment-related hiring decisions.

Josephs did not come to work for PacBell until about 16 years after his violent act, about 15 years after his plea of not guilty by reasons of insanity, and about 12 years after his release from a mental institution. The jury knew that, before being hired by PacBell, Josephs worked successfully for Cox Communications for a decade; as a Repair Service Technician for Cox, he entered thousands of customers' homes without incident. The jury knew that Josephs performed his job duties well at PacBell, too. The jury heard Maches' testimony that Josephs was performing well on the job and that Maches considered Josephs a potential asset to PacBell. When the jury found that Josephs was "qualified" and that he satisfied all "job-related requirements," it necessarily found that he could be trusted in customers' homes and was presently mentally stable, not dangerous.

The jury also heard evidence that PacBell was willing to assess present dangerousness objectively when the employee was not mentally ill or perceived to be so. For example, the jury heard evidence that PacBell had reinstated one service technician who had a felony domestic violence conviction.

It is undisputed that, if a person *were* in fact untrustworthy or dangerous in customers' homes, for whatever reason, the person would *not* be qualified. The jury simply found, based on the evidence, the Josephs was, in fact, safe and qualified, and that PacBell's fears were objectively unreasonable and based on a discriminatory, incorrect assumption.[5]

---

[5]PacBell also argues that employers are entitled to protect themselves against potential liability from a negligent hiring claim if an employee commits a violent act against a customer. Requiring employers to rely on facts rather than stereotypes does not undermine employers' ability to hire only fully qualified people.

B.  *Evidentiary Rulings*

PacBell challenges two of the district court's evidentiary rulings. We review "evidentiary rulings for abuse of discretion and will not reverse absent some prejudice." *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1342 (9th Cir. 1987). PacBell first argues that the district court erred when it admitted into evidence statements made during Josephs' grievance proceeding, asserting that this ruling violated Federal Rule of Evidence 408 and federal labor policy.

Rule 408 states in pertinent part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

[13] Because the purpose of Rule 408 is to encourage the compromise and settlement of existing disputes, and the grievance proceeding did not concern Josephs' not-yet-filed discrimination claim, the district court did not abuse its discretion when it admitted the statements made by PacBell employees.[6] *See Cassino* 817 F.2d at 1343.

[14] PacBell also contends that the district court should not have admitted evidence of three other employees' grievance settlements because these employees' circumstances were not

---

[6]The one Ninth Circuit case PacBell cites in support of its federal labor policy argument, *Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988), stands only for the proposition that statements made in grievance proceedings may not be used as a basis for a state tort claim.

"nearly identical" to Josephs' situation. In a discrimination case, a showing that the employer treated "similarly situated" employees more favorably than the plaintiff is probative of the employer's discriminatory motivation. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Id.* Each of the three employees at issue in this appeal meets this standard. Like Josephs, each (1) was a service technician, (2) failed to reveal prior criminal conviction on the employment application, (3) was terminated, and (4) participated in the grievance process. Therefore, the district court did not abuse its discretion in admitting into evidence their employment history and grievance settlements. *See id.*

## C.  *Jury Instructions*

PacBell argues that the jury instructions were erroneous in two respects. "In evaluating jury instructions, this court considers the charge as a whole to determine whether it is misleading or misstates the law . . . and will not reverse a judgment because of an erroneous instruction if the instructions fairly and adequately cover the issues." *Cassino*, 817 F.2d at 1344.

PacBell first argues that the district court "gave only the first part of the mixed motive instruction, imposing liability if plaintiff's 'regarded as' disability was 'a motivating factor,' without including the second part — in effect defendant's affirmative defense [that it would have terminated plaintiff for other reasons anyway]."[7] PacBell asserts that these instructions violate Supreme Court precedent in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat.

---

[7]We recently decided that "the ADA causation standard is a motivating factor standard." *Head v. Glacier N.W., Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005).

1074, *as recognized in Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003).

In *Price Waterhouse*, the Supreme Court set forth the "respective burdens of proof of a defendant and plaintiff in a suit under Title VII when it has been shown that an employment decision resulted from a mixture of legitimate and illegitimate motives." *Id.* at 232. The Supreme Court rejected the defendant's argument that the statute required the plaintiff to show "but-for causation" for the employment decision, holding that the plaintiff could meet her burden of proof by simply showing that the employer "relied upon sex-based considerations in coming to its decision." *Id.* at 242. The defendant then had an affirmative defense if it could prove that "even if it had not taken gender into account, it would have come to the same decision regarding a particular person." *Id.* Thus, "once a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." *Id.* at 244-45 (footnote omitted).

**[15]** Here, while the jury instructions included the term "motivating factor," that term, as defined in the instructions, required Josephs to show "but-for" causation. The jury was specifically told that "a motivating factor" was "something that moves the will and induces action." In addition, the jury was instructed that Josephs had to prove that PacBell would not have made the same decision **but for** his "regarded as" disability. Therefore, Josephs had a heavier burden of proof than that required by *Price Waterhouse*. Moreover, in rendering a verdict for Josephs, the jury necessarily decided that PacBell would not have refused to reinstate Josephs for other reasons.

Second, PacBell argues that the district court erred in giving Jury Instruction No. 31, because it led the jury to think

that the sample of three other employees had statistical value. This instruction provided:

> In judging the weight to be given statistical evidence, you may take into consideration the size of the group along with all of the other evidence. Generally, the larger the group size, the more probative the result.

[16] The evidence that Josephs introduced regarding the three other employees was relevant to his claim. Instruction No. 31 properly told the jury to weigh its probativeness considering the size of the group. Thus, it was not error to give the instruction.

AFFIRMED.

CALLAHAN, Circuit Judge, dissenting:

As presented to us, this case requires that Pac Bell reinstate as a service technician a person it believes may pose a danger to its customers. I dissented from the panel's initial opinion because unless it is determined that Pac Bell's concern that Josephs is dangerous is unreasonable, Pac Bell should not be required to send him into its customers' homes. The majority's opinion comes close to accepting this legal proposition, but it also holds that the jury "necessarily found that [Josephs] could be trusted in customers's homes." I continue to dissent because my review of the record reveals that as a result of the prejudicial admission of irrelevant evidence and the improper truncation of the jury instruction on mixed motives, the jury did not, and was not asked to, determine whether Pac Bell's concerns regarding Josephs were reasonable. Accordingly, I would vacate the judgment entered on the jury verdict and remand for a new trial.

In 1982, Josephs was arrested, and subsequently convicted for misdemeanor battery on a peace officer. He was also arrested for attempting to murder a high school friend who was a quadriplegic. Josephs was found not guilty by reason of insanity, spent two-and-a-half years in a state mental hospital, and was released in 1985.

In 1997, Josephs applied for a job with Pac Bell as a service technician. A service technician performs unsupervised, in-home telephone installation or repair. Josephs failed to disclose his prior conviction or his stay in the state mental hospital on his application. In April 1998, when Pac Bell discovered Josephs' deception, it terminated his employment.

After initially going to the Equal Employment Opportunity Commission ("EEOC") in November 1998, and being improperly advised, Josephs tendered a charge of discrimination to the EEOC in April 1999, which was considered filed as of November 1998.[1] Josephs then filed this action alleging that Pac Bell wrongfully terminated his employment. It was not until three years after he filed his action that Josephs, in his fourth amended complaint, formally asserted a separate claim for an alleged failure to reinstate his employment. Although I question whether Josephs exhausted his administrative remedies on this claim,[2] the real harm from the district

---

[1]I agree with the majority that the district court did not abuse its discretion in applying equitable tolling to the filing of Josephs' EEOC complaint.

[2]This case reveals the tension between the requirement that a plaintiff exhaust his or her administrative remedies by filing a complaint with the EEOC and the California Department of Fair Housing and Employment and the liberal construction of such complaints. Unlike the majority, I find little comfort in *Couveau v. American Airlines*, 218 F.3d 1078, 1082 (9th Cir. 2000). In *Couveau*, we held that the plaintiff's second claim was unquestionably like her initial claim and did not raise a new basis for alleged discrimination. *Id.* Here, although Josephs' administrative complaints alleged that he was wrongfully terminated because of a perceived mental disability and sought reinstatement, they referred to the April 1998

court allowing Josephs' to maintain causes of action for wrongful termination and failure to reinstate was its failure to keep them separate.

As the majority notes, in order to state a failure to reinstate claim separate from a wrongful termination claim, the new claim must allege "new elements of unfairness, not existing at the time of the original violation." *Inda v. United Airlines, Inc.* 565 F.2d 554, 561-2 (9th Cir. 1977). The district court recognized this in its June 2002 Order re: Motions in Limine, its first order to address Josephs' failure to reinstate claim. The court held that Josephs had produced sufficient evidence to survive a motion for summary judgment and explained:

> *See EEOC v. Hall's Motor Transit*, 789 F.2d 1011 (3rd Cir. 1986) (EEOC produced sufficient evidence to support a claim of discriminatory failure to reinstate where the black employee's prior accident was minor compared with that of the white employees and the EEOC introduced considerable evidence regarding the employer's reputation for being biased). Pac Bell's attempt to distinguish *Hall's Motor* from Josephs' grievance proceedings is unavailing. Josephs has produced evidence that some employees who lied on their employment applications were reinstated, as well as evidence of statements indicating that Pac Bell employees perceived Josephs as having a mental disability.

termination of his employment and neither mentioned the grievance process. This seems meaningful as Josephs' failure-to-reinstate claim arises out of the grievance process and requires new elements of unfairness that are not part of his wrongful termination claim. It is not clear that the purposes of the exhaustion requirement were met in this case. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (noting that the administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision); *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1613 (Cal. Ct. App. 1995).

The district court's factual determination is controlling and, accordingly, I agree with the majority that Josephs stated a separate claim for discriminatory failure to reinstate.

The district court's reasoning, however, presaged the error to come. Josephs' claim for failure to reinstate is not based on an allegation that others who lied on their employment applications were reinstated. Rather, his failure-to-reinstate claim alleges discrimination under the Americans with Disabilities Act (AADA"), 42 U.S.C. § 12101 *et seq*.

Nonetheless, the district court admitted evidence of three other employees' grievance settlements finding that the employees were similarly situated. This was prejudicial error as none of the other employees displayed "similar conduct," none raised any issues of mental disability. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (noting that employees were not similarly situated where they were "not involved in the same type of offense" and "did not engage in problematic conduct of comparable seriousness"). It is true, as the majority notes, that these employees were service technicians, had failed to reveal prior criminal convictions, had been terminated, and had participated in the grievance process. However, other than having been terminated and participating in the grievance process, criteria that are inherent in seeking reinstatement, the other employees' grievances had nothing in common with Josephs' failure-to-reinstate claim. This claim was based on his allegation that under the ADA, Pac Bell could not decline to reinstate Josephs based on his prior criminal activity and stay in a mental health facility. The erroneous admission of grievance settlements of other employees who, in fact, were not similarly situated, was prejudicial because it distracted the jury from determining whether Josephs was a qualified individual for the position.

This prejudice was compounded by the district court's jury instructions. The district court's focus on whether Josephs

was perceived as having a disability under the ADA, coupled with its failure to give the second part of the mixed-motives instruction, removed from the jury the question of whether Josephs was not qualified because of his past, regardless of Pac Bell's attitude toward him. This was critical to Pac Bell's defense, and is conceptually different from the "but for" instruction that the majority suggests was curative. The latter directs the jury to evaluate Pac Bell's motives for not reinstating Josephs, while the former asks the jury to determine the issue of whether Pac Bell's fear that Josephs might be dangerous was reasonable.[3] The instructions as given allowed the jury to reason that Josephs must be qualified if it determined that Josephs did not presently have a mental disability.[4]

The majority points out that Pac Bell does not complain that it was prevented from presenting whatever evidence it deemed relevant and argues that there was sufficient evidence before the jury for it to conclude that Josephs was not dangerous. This may be true, but my review of the record indicates that the jury did not make a specific determination of Josephs' dangerousness. Indeed, I read the majority opinion as implicitly admitting as much because it is only through an analysis of what the term "qualified" means under the ADA that it concludes that because the jury found that Josephs was "qualified," the jury "necessarily found that he could be trusted in customers' homes." In my view, neither the judge nor the jury ever made a determination as to the reasonableness of Pac

---

[3]Although not presented in these terms by Pac Bell, the failure to determine whether Pac Bell reasonably considered Josephs dangerous is conceptually similar to a failure to specifically determine whether a person is "qualified" under the ADA and thus covered by the ADA. *See* 42 U.S.C. § 12112(a). In *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1480 (9th Cir. 1996), we noted that to prevail under the ADA, a person must show first that he is disabled and second that he is qualified.

[4]The jury's request for clarification as to the instruction concerning the reasons for Pac Bell's refusal to reinstate Josephs suggests that it may well have been confused on how to handle Josephs' possible dangerousness.

Bell's perspective that Josephs — because of his past — might pose a danger to its customers.

The importance of determining whether Pac Bell's concerns about Josephs were reasonable is apparent from a review of California's law on negligent hiring. In *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (Cal. Ct. App. 2000) the California Court of Appeal reiterated that in California, "an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness before hiring him." Similarly, in *Federico v. Superior Court*, 59 Cal. App. 4th 1207, 1214 (Cal. Ct. App. 1997), the court noted that if liability results "it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business at hand." The court further explained that an employer's duty "is breached only when the employer knows, or should know, facts which would warn a reasonable person that the employee presents an undue risk of harm to third persons in light of the particular work to be performed." *Id. Federico* further reiterates that whether a defendant was negligent constitutes a question of fact for the jury except where reasonable jurors could draw only one conclusion from the evidence presented in which case a lack of negligence may be determined as a matter of law. *Id.*

The potential liability to Pac Bell is obvious and sizable. On this record, it is conceivable that a reasonable jury might well find Pac Bell liable were plaintiff, while employed as a service technician, to gain entrance to a customer's home and attack a customer. Of course, I do not mean to suggest that this will happen. Nonetheless, this is the exposure that Pac Bell faces.

Josephs, however, is not at the mercy of Pac Bell's unfettered fears. As noted by the majority, Josephs could, and did, present evidence to support his contention that his past does

not create any likelihood of future dangerousness. He also presented evidence to support his claims that his "condition" was covered by the ADA and that he was completely qualified. Thus, Pac Bell is not entitled to judgment as a matter of law on the sufficiency of the evidence. Hence, I agree with the majority that *were* a jury to determine that Josephs posed no danger, that is to say that Pac Bell's concerns were unreasonable, this would provide Pac Bell with a defense should Josephs, despite the jury's prediction, harm a customer.

I dissent, however, from the majority's determination that such a determination was made in this case. Here, despite Josephs' proffered evidence that his past does not create any likelihood of future dangerousness, the district court's erroneous admission of evidence of grievance settlements of employees who were not similarly situated, and failure to give the second prong of the mixed motives instruction, resulted in a jury verdict that I cannot construe as a determination of the reasonableness or unreasonableness of Pac Bell's concerns over Josephs' dangerousness. Accordingly, I would vacate the judgment entered on the jury verdict and remand.