**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff–Appellant,

v.

**CITY OF NORFOLK POLICE DEPARTMENT,** Defendant–Appellee.

No. 94–1350.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1994.

Decided Jan. 26, 1995.

**ARGUED:** Lamont Navarro White, Office of Gen. Counsel, E.E.O.C., Washington, DC, for appellant. Harold Phillip Juren, Deputy City Atty., Norfolk, VA, for appellee. **ON BRIEF:** James R. Neely, Jr., Deputy Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Vincent J. Blackwood, Asst. Gen. Counsel, Office of Gen. Counsel, E.E.O.C., Washington, DC, for appellant.

Before RUSSELL and MOTZ, Circuit Judges, and CURRIE, United States District Judge for the District of South Carolina, sitting by designation.

Vacated and remanded by published opinion. Judge MOTZ wrote the opinion, in which Judge RUSSELL and Judge CURRIE joined.

## OPINION

MOTZ, Circuit Judge:

The district court refused to enforce an Equal Employment Opportunity Commission (EEOC) investigatory subpoena finding that the underlying charge was untimely and, therefore, that the EEOC lacked jurisdiction over the matter. Because it was not clear from the face of the charge or otherwise apparent that the charge was untimely, we vacate the district court order and remand for enforcement of the subpoena.

The relevant facts are not disputed. On April 22, 1986, James C. Powell, an African-American, was suspended from his position as a police officer with the Norfolk Police Department (Norfolk) following an incident in which Powell shot and wounded a fleeing shoplifting suspect. The suspension was based on a criminal charge of unlawful wounding growing out of the incident and on six related charges of violation of various administrative regulations. On April 22, Powell also received and signed a certificate of suspension that provided: "This is, in effect, a decision to terminate your employment subject only to your rights of appeal...." Powell appealed his suspension to the Norfolk Police–Fire Trial Board (Board), but requested a postponement of the hearing on his administrative appeal pending the outcome of the criminal proceedings that had been initiated against him following the shooting. During the pendency of his administrative appeal, Powell remained suspended from active duty without pay.

On January 21, 1987, Powell was convicted in state court of the felony of unlawful wounding; the Court of Appeals of Virginia subsequently affirmed that conviction. During the course of the criminal proceedings, the administrative appeal to the Board remained in abeyance, largely at Powell's request. On June 18, 1990, Powell filed a charge with the EEOC, alleging that his suspension by Norfolk was racially motivated. The EEOC dismissed Powell's charge as untimely, stating that more than 180 days had passed since Powell's April, 1986, suspension and so the EEOC was not authorized to investigate the charge.

On September 6, 1990, Powell's felony conviction was set aside by a state trial court in light of newly discovered evidence. A new trial was ordered, but the Commonwealth chose not to re-try the case. As a result, on January 28, 1991, the criminal charges against Powell were dismissed. A month later, on February 20, 1991, Powell forwarded a letter to the Chief of the Norfolk Police asking for "immediate reinstatement of my job as a Norfolk Police Officer." The next day the Chief of Police denied Powell's request for immediate reinstatement, informing Powell that he would need to pursue the

administrative appeal process in order to be reinstated.[1]

Following the denial of his request for immediate reinstatement, on March 22, 1991, Powell filed a second charge with the EEOC. In this charge, Powell alleged that "[o]n February 21, 1991, I was denied reinstatement into the position of Police Officer with the City of Norfolk Police Dept .... because of my race...." On March 25, 1991, the EEOC sent Norfolk a notice of the second charge filed by Powell. Two weeks later, the EEOC requested information from Norfolk concerning its policy with respect to reinstating suspended police officers. Norfolk refused to supply the requested information, arguing that the EEOC was exceeding its authority by conducting an untimely investigation of Powell's 1986 suspension. The EEOC replied that the investigation concerned allegations of discrimination relating solely to Norfolk's February, 1991, refusal to reinstate Powell, not to Norfolk's 1986 suspension of Powell. Nonetheless, Norfolk continued to refuse the EEOC's request for information. On May 26, 1992, the EEOC issued an administrative subpoena seeking the previously requested information as to Norfolk's policy with respect to reinstating police officers after they have been suspended for violations "of the criminal code." When Norfolk refused to supply the EEOC with the subpoenaed information, the EEOC filed this action in the United States District Court for the Eastern District of Virginia to enforce the subpoena.

The district court refused to enforce the subpoena, holding that the EEOC was without jurisdiction over the matter because the underlying charge that the EEOC sought to investigate was untimely. *EEOC v. City of Norfolk Police Dept.*, No. 2:93–MC–158, slip op. at 2 (E.D. Va. January 12, 1994). The court reasoned that Norfolk's refusal to reinstate Powell in February, 1991, was not a separate act of discrimination, triggering a new limitations period for filing a Title VII claim, but was only a reassertion of Norfolk's 1986 employment decision to suspend Powell. *Id.* at 3. Accordingly, the district court concluded that Powell's charge as to Norfolk's refusal to reinstate him was untimely because it was not filed with the EEOC within 180 days of Norfolk's 1986 suspension of Powell.

In general, the role of the district court in an administrative subpoena enforcement proceeding is "sharply limited." *EEOC v. South Carolina Nat'l Bank*, 562 F.2d 329, 332 (4th Cir.1977); *see also EEOC v. American & Efird Mills, Inc.*, 964 F.2d 300, 303 (4th Cir.1992) ("The scope of judicial review over administrative subpoenas is necessarily limited by the intent of such review process. The process is not one for a determination of the underlying claim on its merits; Congress has delegated that function to the discretion of the administrative agency"). Therefore "[c]ourts should generally enforce administrative subpoenas where, as an initial matter, the administrative agency shows that (1) it is authorized to make such investigation; (2) it has complied with statutory requirements of due process; and (3) the materials requested are relevant." 964 F.2d at 302–03; *see also Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 217–18, 66 S.Ct. 494, 509–10, 90 L.Ed. 614 (1946). There is no claim here that the EEOC has not complied with the statutory requirements of due process or that the requested materials are irrelevant. As in *American & Efird Mills*, this appeal "focuses solely on the EEOC's disputed investigatory authority." 964 F.2d at 303.[2]

---

1. On November 4, 1992, the Board finally heard Powell's appeal of his April, 1986, suspension. Two weeks later, the Board issued a decision finding Powell had violated four administrative regulations. The Board affirmed Powell's six-and-a-half-year suspension, but ordered that Powell be reinstated as of November 6, 1992, without back pay or benefits, and that he be placed on probation prior to assuming his full duties. The Board also ordered that Powell undergo a retraining program and that a letter of reprimand be placed in his personnel file.

2. In *American & Efird Mills*, we recognized that a subpoenaed party can defeat enforcement of the full scope of a subpoena by demonstrating that the agency's request is "excessive or unduly burdensome." 964 F.2d at 303. Neither in the court below nor before us did Norfolk seek to limit the scope of the subpoena on grounds of relevance or undue burden. Accordingly, as the City Attorney conceded at oral argument, any argument on these grounds has been waived.

In *EEOC v. Shell Oil Co.*, 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984), the Supreme Court held that "the existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e–5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." *Id.* at 65, 104 S.Ct. at 1629. The Court concluded that the charge before it did meet the requirements of § 706(b), but it did not address the significance *vel non* of the timeliness of a charge. However, in *EEOC v. Ocean City Police Department*, 820 F.2d 1378 (4th Cir.1987) (*en banc*), *vacated*, 486 U.S. 1019, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988), we relied on *Shell Oil* to hold that "a charge which shows on its face that it is untimely is also an invalid charge incapable of invoking EEOC's investigatory powers." 820 F.2d at 1380. Because it was conceded that the charge was untimely on its face,[3] we held the district court should have refused to enforce the EEOC subpoena. *Id.* The Supreme Court granted certiorari and vacated our judgment in *Ocean City* in light of *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123, 108 S.Ct. 1666, 1675, 100 L.Ed.2d 96 (1988), in which the Court, on other grounds, held that an untimely filing with a state agency does not preclude application of the extended 300–day federal filing period.

Norfolk insists that our judgment in *Ocean City* was vacated on other grounds and that *Ocean City*'s asserted holding that "a timely filed charge" is "a prerequisite to EEOC investigative jurisdiction" is still "to be accorded precedential value." Indeed, Norfolk heavily relies on that "holding." Assuming that when a judgment of this Court has been vacated by the Supreme Court, the opinion containing that judgment is still entitled to some precedential value,[4] Norfolk's reliance on *Ocean City* is nonetheless misplaced. This is so because in *Ocean City* we did not hold that a "timely filed charge" is a "prerequisite" either to judicial enforcement of an EEOC subpoena or to the EEOC's "investigative jurisdiction."

In fact, in *Ocean City* we very carefully explained that we were *not* holding that "subpoenas should be enforced only where there is concededly no timeliness problem," or that "timeliness is a jurisdictional prerequisite" to enforcement of a subpoena. 820 F.2d at 1383 n. 9 (internal quotations omitted). Rather, we held only that if "there are no facts in dispute relating to the untimeliness of the charge," if the charge "*shows on its face that it is untimely*," and "if the filing of the charge is *concededly out of time* or ... such is *otherwise apparent*," then "enforcement of a subpoena based on that charge should be denied." *Id.* at 1381, 1380, and 1383 n. 9 (emphasis added). Only if the charge here "shows on its face that it is untimely," is "concededly out of time," or this was "otherwise apparent," would *Ocean City* provide any precedent for the action taken by the court below.

Norfolk does not claim that Powell's charge of discrimination in Norfolk's refusal to reinstate Powell immediately is untimely on its face or that this charge is conceded to be untimely. However, Norfolk does appear to assert that the untimeliness of the charge is "otherwise apparent." The crux of Norfolk's argument is that Powell's charge that Norfolk unlawfully discriminated against him in refusing to reinstate him immediately in February, 1991, is "merely an attempt to resurrect his original complaint that his sus-

3. The charge in *Ocean City* was not timely filed with the state agency. We had previously held that untimely state charges were not entitled to the 300–day period provided for in 42 U.S.C. § 2000e–5(e)(1). *See Dixon v. Westinghouse Elec. Corp.*, 787 F.2d 943, 946 (4th Cir.1986), *vacated*, 486 U.S. 1019, 108 S.Ct. 1990, 100 L.Ed.2d 222 (1988) (vacated on same grounds as *Ocean City*).

4. This is not at all clear. *See O'Connor v. Donaldson*, 422 U.S. 563, 578 n. 2, 95 S.Ct. 2486 n. 2, 2489, 45 L.Ed.2d 396 (1975) (a "decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving this Court's opinion and judgment as the sole law of the case"). *See also American & Efird Mills*, 964 F.2d at 304 n. 6 (noting "uncertain nature" of *Ocean City* as precedent). *But see United States Dept. of Health & Human Serv. v. FLRA*, 983 F.2d 578, 581–82, 582 n. 2 (4th Cir.1992) (adopting reasoning of vacated opinion where vacatur did not address the issue, although refusing to determine if the vacated opinion was precedent).

pension from duty in April, 1986 was racially discriminatory." [5]

Norfolk argues that *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), requires a holding that Powell's claim is untimely. In *Ricks*, the Supreme Court held that limitations began to run when the plaintiff, a college professor, was notified that he was denied tenure and would be offered a one-year "terminal" contract, not when that terminal contract finally expired a year later. *Id.* at 259, 101 S.Ct. at 504. The Court explained that in order for limitations to commence with the date of the expiration of the terminal contract:

> Ricks would have had to allege and prove that the manner in which his employment was terminated [via the terminal contract] differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure. *But no suggestion has been made that Ricks was treated differently from other unsuccessful tenure aspirants.*

*Id.* at 258, 101 S.Ct. at 504 (emphasis added). This is, of course, the critical difference between Ricks' claim and Powell's. Powell asserts that he was treated differently than other persons suspended from the Norfolk Police Department because of pending criminal charges. Specifically, his claim is that while similarly suspended white officers were immediately reinstated after criminal charges against them were dismissed, "because of [his] race, Black," he was denied immediate reinstatement after the criminal charges against him were dismissed. Thus *Ricks* is hardly authority for finding the untimeliness of Powell's claim "apparent."

Similarly, Norfolk's reliance on *Collins v. United Air Lines, Inc.*, 514 F.2d 594 (9th Cir.1975), and cases that have followed it is misplaced. In *Collins*, the plaintiff resigned in May, 1967, because of an airline policy requiring flight attendants to resign or be terminated upon marriage. Eighteen months later, in November, 1968, the airline discontinued the policy. Nearly three years after that change in policy, in October, 1971, the plaintiff wrote to her employer, United, asking that she be reinstated. United promptly refused, and in November, 1971, the plaintiff filed a charge with the EEOC alleging that she had been denied reinstatement on the basis of her sex. At the time the plaintiff made her request for reinstatement, nothing had occurred after her discharge, or at least after the change in policy, to provide any basis for a claim that the refusal to reinstate her was discriminatory in and of itself. Accordingly, the Ninth Circuit properly concluded that "[i]n this context," it could not accept the plaintiff's "argument that United's denial of her request for reinstatement . . . was a new and separate discriminatory act or somehow rendered the initial violation, if any, a continuing one." *Id.* at 596.

In contrast, Powell's request for reinstatement was prompted by a change in circumstances following his discharge, *i.e.*, the dismissal of the criminal charges against him. According to Powell's allegations, this change in circumstances was critical; it would have provided a basis for reinstatement of a white Norfolk police officer because white officers were customarily reinstated immediately after criminal charges were resolved in their favor, without being required to complete the administrative grievance procedure. Thus, at least arguably, Norfolk's refusal to reinstate Powell immediately, unlike United's refusal to reinstate Collins, was a "new" act of discrimination "separate" from the original discharge. Even the *Collins* progeny recognize in such circumstances a refusal to reinstate can constitute a new act of discrimination. *See, e.g., Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir.1985) ("failure to rehire subsequent to an allegedly discriminatory firing . . . cannot resurrect the old discriminatory act" but there can be "new and discrete act of discrimination in the refusal to rehire itself"); *see also Inda v. United Air Lines, Inc.*, 565 F.2d 554, 561–62 (9th Cir.1977) (in which the Ninth Circuit itself distinguished *Collins*, finding a charge of re-

---

5. It is conceded that Powell did not timely challenge his suspension. *See* 42 U.S.C. § 2000e-5(e)(1) (complaint must be filed with EEOC "within one hundred and eighty days after the alleged unlawful employment practice"). Indeed, when in June, 1990, Powell filed a charge with the EEOC challenging his 1986 suspension, the EEOC rejected that charge as untimely.

fusal to reinstate timely because "new elements of unfairness, not existing at the time of the original violation, attached to denial of re-employment"), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978).

In *Poolaw v. City of Anadarko,* 660 F.2d 459 (10th Cir.1981), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985), the plaintiff, Poolaw, after being discharged from his position as a police officer, appealed his discharge to the Board of Review, which found in his favor. Nonetheless, his request for reinstatement was denied. Three months later, Poolaw filed a discrimination charge with the EEOC alleging, as Powell does, that a white employee in similar circumstances had been immediately reinstated. Based on these facts, the Tenth Circuit concluded that "Poolaw's allegation that his post-termination treatment was discriminatory is a claim separate and distinct from his allegation of discriminatory discharge." 660 F.2d at 465. The court held that, although Poolaw's discrimination claim was filed many months after his original discharge, it was nonetheless timely because it was filed within 180 days of the denial of reinstatement. *Id.; see also Samuels v. Raytheon Corp.,* 934 F.2d 388, 391 (1st Cir.1991) ("[u]nder certain circumstances, an employer's refusal to reinstate an employee who has been terminated may constitute a separate incident of discrimination under title VII"); *Romero v. Union Pacific R.R.,* 615 F.2d 1303, 1311 (10th Cir.1980).

It is at least arguable that in alleging that Norfolk engaged in "post-termination" discrimination, Powell, like Poolaw, has stated a claim for employment discrimination "separate and distinct" from any discrimination arising from the termination itself. Specifically, Powell has alleged that, apart from any discrimination in originally suspending him, Norfolk has also discriminated against him because of his race in refusing to reinstate him immediately after the criminal charges upon which the suspension had been based in part were dismissed, while promptly reinstating similarly situated white officers.

For these reasons, it was certainly not "apparent" that Powell's charge that Norfolk discriminated in refusing to reinstate him immediately was untimely.[6] Under such circumstances, our precedent favors enforcement of the EEOC subpoena. *See American & Efird Mills,* 964 F.2d at 302–03; *South Carolina Nat'l Bank,* 562 F.2d at 332; *E.E.O.C. v. Maryland Cup Corp.,* 785 F.2d 471, 475 (4th Cir.), *cert. denied,* 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986). Accordingly, the EEOC was authorized to investigate the charge that Norfolk discriminated against Powell because of his race in refusing to reinstate him immediately after the criminal charges were dismissed and the district court should have enforced the subpoena issued by the EEOC. The decision of the district court is, therefore, vacated and remanded with instructions to enforce the subpoena.

*VACATED AND REMANDED.*

---

**6.** We express no opinion on the substance of Powell's claim. Our holding is simply that the EEOC has authority to investigate that claim and to determine whether further legal action is warranted. We do note, as was conceded at oral argument, that although Powell requested "back pay," leave, and other benefits from the time of his original suspension in April, 1986, he is in no event entitled to any benefits prior to February 21, 1991, the date on which Norfolk refused to reinstate him.