# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 17, 2012        Decided March 2, 2012

No. 11-5053

ARTHUR GILBERT,
APPELLANT

v.

JANET ANN NAPOLITANO, SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-02128)

*Leizer Z. Goldsmith* argued the cause and filed the briefs
for appellant.

*Michelle Lo*, Assistant U.S. Attorney, argued the cause
for appellee. With her on the brief were *Ronald C. Machen
Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S.
Attorney.

Before: HENDERSON, TATEL, and GARLAND, *Circuit
Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant alleges that his employer, the United States Customs and Border Protection Agency, repeatedly rejected him for promotions in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. The district court granted summary judgment for the agency. For the reasons set forth in this opinion, we reverse in part and affirm in part.

## I.

Arthur Gilbert has had a long and tumultuous history at Customs, now a component of the Department of Homeland Security. He originally worked in the agency's San Diego field office, but in 1997 he was discharged for alleged misconduct during a botched cocaine seizure. Gilbert, who is Mexican American and was born in 1952, sued for reinstatement, claiming age and national-origin discrimination. When Customs refused to turn over certain documents, Gilbert asked Virginia Gengor, a Customs employee he had previously supervised, to get the documents for him. Gengor agreed and delivered them to Gilbert at a hotel. Armed with the documents, Gilbert settled with Customs, agreeing to take two years of leave without pay, after which he would receive a position in Customs's D.C. Headquarters at the GS-13 grade of the federal government's General Schedule pay scale. But because some of the documents that Gengor handed over to Gilbert were confidential and marked "official use only," Customs disciplined her. Jayson Ahern, who later became Assistant Commissioner in the Office of Field Operations at Customs Headquarters and who made one of the promotion decisions at issue in this case, presided over Gengor's disciplinary hearing.

Immediately after arriving at Headquarters to begin work at his GS-13 position, Gilbert met with Robert Jacksta, his

second-line supervisor, and explained that he had brought successful discrimination claims in San Diego and that he "wanted a clean start." Gilbert Dep. 12:25, May 13, 2009. In his deposition, Gilbert testified that Jacksta responded that he would "take care of [him], don't worry." *Id.* at 12:7–8. Two months later, Gilbert started applying for promotions to GS-14 positions. Gilbert's name appeared on the selection register (the list of eligible candidates) for several positions, but Jacksta never recommended him and he was not promoted. Instead, Customs promoted Gay Laxton, Mark Reefe, and John Milne—all white and all younger than Gilbert. (Although Gilbert does not take issue with it, Customs also promoted Robert Colbert, a white male one year older than Gilbert.) Customs returned one register without selecting anyone.

In response, Gilbert filed a complaint with Customs's Equal Employment Opportunity (EEO) office and then sued in the United States District Court for the District of Columbia, alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. During the pendency of these proceedings, Gilbert applied for another GS-14 position, Chief of Staff to Assistant Commissioner Ahern. Gilbert's name again appeared on the selection register, but Ahern selected Marcy Brodsky, a white woman younger than Gilbert. Gilbert amended his complaint to allege that this too was discriminatory and retaliatory.

The district court struck Gilbert's statement of material facts in dispute for failing to comply with Local Rule 7(h), which requires parties to file "a separate concise statement of genuine issues" including facts "as to which it is contended there exists a genuine issue necessary to be litigated." D.D.C.

Local Civ. R. 7(h)(1). Then, after considering the remaining record, the district court granted summary judgment to Customs on all claims. *See Gilbert v. Napolitano*, 760 F. Supp. 2d 21 (D.D.C. 2011). Gilbert appeals, and we review the district court's grant of summary judgment de novo. *See Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009).

## II.

Gilbert makes many arguments, only two of which have merit.

First, Gilbert contends that the district court erred in dismissing his claims stemming from John Milne's promotion. The district court dismissed those claims without reaching the merits "because Gilbert failed to exhaust his administrative remedies." *Gilbert*, 760 F. Supp. 2d at 29. Gilbert argues, as he did in the district court, that Customs forfeited its exhaustion defense by failing to raise it in its answer as required by Rule 8(c) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any . . . affirmative defense[.]"). Customs points out that it promptly asserted the defense in its motion to dismiss, but this misses the point: as we have explained, "a party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 345 (D.C. Cir. 1997). Thus, Customs forfeited the exhaustion defense, and the district court "should not . . . have considered" it. *Id.* at 341; *see also id.* at 345 (noting that defendant may seek leave to amend its answer on remand).

Alternatively, Customs urges us to affirm on the ground that "Gilbert fail[ed] to show that he was significantly better qualified than Milne." Appellee's Br. 56. The district court,

however, never reached this question, and we normally decline to consider issues for the first time on appeal. *See, e.g.*, *Solomon v. Vilsack*, 628 F.3d 555, 568 (D.C. Cir. 2010) ("Lacking the benefit of the district court's analysis of whether genuine issues of material fact exist that would preclude the entry of summary judgment, we believe the most prudent course is to remand for the district court to consider this issue in the first instance."). We shall thus remand this claim to the district court.

Second, Gilbert argues that a genuine issue of material fact exists as to whether Customs discriminated and retaliated against him when it promoted Mark Reefe. Customs contends that it selected Reefe over Gilbert solely because Reefe was more qualified. Where, as here, an employer offers a legitimate, nondiscriminatory explanation for its decision to promote one employee over another, "the one central inquiry on summary judgment is whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the plaintiff on a prohibited basis." *Hamilton v. Geithner*, No. 10-5419, 2012 WL 119134, at *5 (D.C. Cir. Jan. 17, 2012) (internal quotation marks omitted). Because "[i]n a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call," the employee must show that a reasonable juror could find him "substantially more qualified" than the selected employee. *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (internal quotation marks omitted). That said, "[e]ven if [the employee] show[s] that [the asserted reason] was not the actual reason for his [adverse employment action], he still would have to

demonstrate that the actual reason was a . . . discriminatory [or retaliatory] reason." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 496 n.4 (D.C. Cir. 2008). And a jury, having found the employer's explanation pretextual, may in appropriate circumstances infer discrimination if the plaintiff is a member of a protected class (or, for ADEA claims, over forty years of age, *see* 29 U.S.C. § 633a(a)), and the slot for which he applied went to an applicant outside that class. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("The factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination." (internal quotation marks omitted)); *see also Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000) (the prima facie framework is "(1) [the employee] is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) either someone not of his protected class filled the position or the position remained vacant and the employer continued to seek applicants"). Similarly, having found the employer's explanation pretextual, the jury may in appropriate circumstances infer retaliation if it finds "(1) that [the plaintiff] engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones*, 557 F.3d at 677.

We start with Customs's claim that Reefe was promoted to the GS-14 position because of his superior qualifications. In response, Gilbert points to evidence he says shows that he was in fact substantially more qualified than Reefe. For example, Arthur Pitts, who was Gilbert's supervisor at the time of the promotion and who served as the first-line supervisor for the GS-14 position being filled, testified that "if you were making a selection based on qualification and

experience, the qualification and experience of Art Gilbert would dwarf that of Mark Reefe. I know that." Pitts Dep. 140:11–14, Dec. 6, 2002. According to Pitts, the difference between Gilbert and Reefe's qualifications "was large enough to slap you in the face." Pitts Dep. 69:5–7, June 30, 2009. The government objects, claiming that because "Pitts had not supervised Reefe prior to the selection," he "had no basis for comparing their relative qualifications." Appellee's Br. 43. Not so. A reasonable jury could easily conclude that Pitts— not only the supervisor for the very position in question, but someone who worked directly with both Reefe and Gilbert immediately after the promotion—was well-positioned to assess their relative qualifications. Should the jury credit Pitts's testimony, it could find that Gilbert's qualifications indeed "dwarf[ed]" Reefe's, and that Customs's reliance on relative qualifications was pretextual. Because Gilbert is Mexican American and was over forty when Customs promoted Reefe, a younger white male, the jury could then conclude that Customs's true reason was Gilbert's race or age. We shall therefore reverse the grant of summary judgment on Gilbert's discrimination claims stemming from this promotion and remand for trial.

Gilbert's retaliation claim is a different matter. To create a triable issue of fact on that claim, aside from establishing pretext, Gilbert must offer evidence that he engaged in protected activity, i.e., "opposed any practice made an unlawful employment practice by [Title VII]," 42 U.S.C. § 2000e-3(a), and that a causal link connects the protected activity and his non-promotion. *Jones*, 557 F.3d at 677; *see also Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) (employee must "present evidence from which a reasonable jury could find that [the] non-promotion was the result of unlawful retaliation"). Gilbert identifies two incidents he claims qualify as protected activity.

First, he argues that his initial meeting with Jacksta, in which he asked for a clean start, was itself protected because he "demanded non-retaliation." Appellant's Br. 43. Gilbert cites *Crawford v. Metropolitan Government of Nashville & Davidson County*, which held that describing an employer's past discrimination while responding to questions in an internal investigation constitutes opposing the unlawful practice. 555 U.S. 271 (2009). But *Crawford* provides no support for the odd proposition that asking a new employer for fair treatment going forward, as opposed to challenging the employer's past unlawful activity, qualifies as opposing a practice made unlawful by Title VII.

Second, Gilbert points to the discrimination claims he brought in the San Diego litigation, reasoning that Jacksta, who knew of those proceedings, retaliated against him by declining to recommend him for the promotion that ultimately went to Reefe. Although bringing discrimination charges undoubtedly qualifies as protected activity, *see* 42 U.S.C. § 2000e-3(a), Customs argues, and we agree, that Gilbert has failed to establish a causal link to that activity. Not only did the litigation take place more than three years earlier, *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."), but Gilbert acknowledges that he never gave Jacksta any details about the charges, instead merely informing him that "I had a prior EEO activity in San Diego," Gilbert Dep. 12:15. In our view, no reasonable jury could infer that the mere mention of such long-ago activity at a distant office would give Jacksta a reason to discriminate. This is especially so given that Jacksta was based in Washington and had no involvement in the events underlying Gilbert's San Diego claims. *See Vickers v. Powell*, 493 F.3d 186, 196 (D.C. Cir. 2007) (holding that no reasonable jury could "find a retaliatory motive at work" where selecting

official never "participate[d] in any of the alleged incidents that make up [employee's] [Title VII] claim").

We can easily dispose of Gilbert's remaining arguments.

He challenges the district court's order striking his statement of material facts for failing to comply with Local Rule 7(h), which requires that parties file a "concise" statement that includes only issues actually in dispute. D.D.C. Local Civ. R. 7(h)(1). Gilbert filed a ninety-page statement containing 758 facts, many of which the district court found "neither material nor disputed." *Gilbert*, 760 F. Supp. 2d at 23 n.1. Given this, the district court's rejection of his statement can hardly be considered an abuse of discretion. *See Twist v. Meese*, 854 F.2d 1421, 1424–25 (D.C. Cir. 1988) (reviewing for abuse of discretion district court's refusal to consider plaintiff's statement of disputed material facts). Moreover, because the district court struck only the statement itself without treating any facts as conceded, Gilbert has failed to show how this decision, even if erroneous, would lead to a different outcome on any of his claims.

Gilbert next argues that a jury could deem him substantially more qualified than Gay Laxton because Laxton had no land border program experience and because Pitts testified that Gilbert was the substantially more qualified of the two. Laxton, who had more than four years at Headquarters including work on passenger control systems directly relevant to the position, was in many ways more qualified than Gilbert, who applied for this promotion after a mere two months at Headquarters. And no reasonable jury could find Customs's qualification-based explanation pretextual based solely on Laxton's dearth of land border program experience because neither the position, as described by Customs employees, nor the vacancy announcement

required such experience. Nor does Pitts's testimony that Gilbert was substantially more qualified than Laxton create a genuine dispute of fact because Pitts was unfamiliar with the relative qualifications of Gilbert and Laxton. Pitts himself admitted that he was "not necessarily" "paying particular attention" to employees, including Gay Laxton, "who worked for other Division Directors." Pitts Dep. 132:17–20, June 30, 2009. Pitts also acknowledged that he "did not object to" or "evaluate" Laxton's promotion. *Id.* at 132:20–22.

Next, Gilbert contends that Customs acted unlawfully when it returned a selection register without selecting anyone for a promotion. To prevail on this claim, Gilbert "must show that the position was not withdrawn simply for lack of a vacancy." *Carter v. George Washington Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004). Gilbert failed to do so, offering nothing more than his own speculation about Customs's needs based on transfers within the GS-13 grade. Gilbert nonetheless argues that he should benefit from an adverse inference because Customs violated Office of Personnel Management regulations when it lost or destroyed promotion files related to the non-selection. *See Talavera*, 638 F.3d at 312 (deeming appropriate an adverse inference where an official destroyed notes that went to the heart of the dispute and that regulations required he keep). But we have no need to consider whether an adverse inference is appropriate here because Gilbert sought no information that would help him establish the key missing component for this claim—that a vacancy continued to exist.

Gilbert's claims with respect to Marcy Brodsky's promotion to Ahern's Chief of Staff are equally meritless. Ahern offered a nondiscriminatory reason for declining to select Gilbert: that he sought "somebody that has [his] confidence, loyalty, trust" because he "need[ed] to make sure

as far as the confidentiality of discussions, making sure as far as the integrity [of] reports, everything is maintained in this whole process going forward." Ahern Dep. 96:3–8, Dec. 9, 2008. Having presided over Virginia Gengor's disciplinary proceeding, Ahern explained that he doubted Gilbert's ability to maintain agency confidences because Gilbert had asked Gengor to retrieve confidential agency documents for his personal use. Gilbert contends that a jury might find Brodsky similarly untrustworthy and thus doubt Ahern's explanation. In his reply brief, however, Gilbert concedes that "Ahern 'honestly' believes that he rejected Gilbert for having obtained the documents a decade earlier." Appellant's Reply Br. 33 n.13. The only question, then, is whether this reason is itself unlawful. *See Woodruff v. Peters*, 482 F.3d 521, 531 (D.C. Cir. 2007) (given a legitimate, nondiscriminatory, non-retaliatory explanation, "[w]e review not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers" (internal quotation marks omitted)). Insisting it is, Gilbert emphasizes that he obtained the documents while pursuing his discrimination claims. But it makes no difference that Gilbert's actions—which Ahern honestly believed constituted misconduct—occurred in the course of a discrimination case because asking a government employee to obtain documents unlawfully cannot itself qualify as protected activity. Thus, because Ahern had an honestly held, nondiscriminatory, non-retaliatory reason for rejecting Gilbert, summary judgment for Customs was entirely warranted.

## III.

We reverse the district court's dismissal of Gilbert's claims stemming from Milne's promotion, reverse its grant of summary judgment with respect to his age and race discrimination claims stemming from Reefe's promotion, and

remand for further proceedings consistent with this opinion. In all other respects, we affirm.

*So ordered.*