SRINIVASAN, Circuit Judge,
concurring in the judgment.
I concur in the court’s decision to deny Kaufman’s petition for review. I respectfully disagree, however, with the majority’s reasons for rejecting Kaufman’s claims. I write separately to clarify the circumstances in which, as I see it, an employer’s refusal to reinstate an employee to his former position might be independently actionable.
To state a claim under federal antiretali-ation laws, an employee must show that he suffered a materially adverse action by his *531 employer that was causally linked to his statutorily protected activity. Ante, at 527-28; accord Howard R.L. Cook & Tommy Shaw Found. for Black Emps. of the Library of Cong., Inc. v. Billington, 737 F.3d 767, 772 (D.C.Cir.2013); see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 2532-33, 186 L.Ed.2d 503 (2013). If the employer articulates a “legitimate nonretaliatory reason” for the adverse action, the employee must establish that the employer’s proffered reason for the action is “pretext.” Holcomb v. Powell, 433 F.3d 889, 901 (D.C.Cir.2006). The requirements for a retaliation claim largely track the requirements for a discrimination claim, although in the discrimination context, the employee must show that the adverse action was connected to his membership in a statutorily protected class rather than to his statutorily protected activity. See Gilbert v. Napolitano, 670 F.3d 258, 261-62 (D.C.Cir.2012).
The majority assumes that EPA’s original decision to prohibit Kaufman from performing Ombudsman-related duties was “adverse” to Kaufman. Ante, at 528.* The majority then goes on to conclude that EPA’s later actions denying reinstatement of Kaufman’s Ombudsman duties failed to constitute adverse actions and that any claims arising from those subsequent actions were therefore untimely. Athough I agree that Kaufman’s claims concerning those subsequent actions are deficient and that the ARB’s rejection of those claims should be affirmed, I part ways with the majority on the rationale by which to reach that conclusion.
This case began when Kaufman initially filed his whistleblower complaint on April 3, 2001. The limitations period under federal antidiscrimination and antiretaliation laws starts to run when the challenged action is made and the employee is notified. Del. State Coll. v. Ricks, 449 U.S. 250, 259, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Here, Kaufman had been informed on December 14, 2000, in the Fields memorandum, that he could no longer perform Ombudsman work. The 30-day limitations period for any claim based on the original decision to remove Kaufman’s Ombudsman duties thus expired on January 13, 2001, well before Kaufman filed his complaint. Kaufman nevertheless initially asserted *532 such a claim, but the ARB found it untimely, and Kaufman does not appeal that determination.
His appeal instead concerns seven claims (Claims 2-8) arising from later actions by EPA that, as Kaufman sees it, manifest EPA’s subsequent refusal to reinstate him to his Ombudsman responsibilities. Ante, at 525-26. Two of the claims (Claims 7 and 8) pertain to EPA’s decision to transfer Ombudsman functions to the Office of Inspector General. The ALJ found that “the transfer of the Ombudsman had no effect on the future employment of Kaufman,” ALJ’s Decision & Order at 43, and I see no reason to reject that factual determination. The remaining claims (Claims 2-6) concern actions taken by EPA in March, April, and May 2001, declining to reinstate Kaufman’s Ombudsman duties and assigning those responsibilities elsewhere. Kaufman alleges that, in refusing to reinstate him to his former role, EPA retaliated against him for his protected whistleblower activities.
The majority allows that “[pjerhaps a failure to reinstate might in some circumstances constitute an independent discriminatory act.” Ante, at 529. That is undoubtedly the case. See Josephs v. Pac. Bell, 443 F.3d 1050, 1060 (9th Cir.2006) (“[W]e join the First, Third, Fourth, Tenth, and Eleventh Circuits and expressly recognize discriminatory failure to reinstate as a separately actionable claim.” (collecting cases)). Even if an employer’s original decision to transfer or terminate an employee is entirely legitimate — or, as here, is immune from challenge because of the running of the limitations period — the employer’s subsequent refusal to reinstate the employee to his former position or responsibilities, if itself motivated by discriminatory or retaliatory animus, is actionable in its own right. The employer’s invulnerability for its original adverse action affords no free pass to engage in discrimination or retaliation when asked to reverse that action. The majority thus correctly includes, in its nonexhaustive list of situations in which a failure to reinstate might be independently actionable, circumstances “where a complainant can show disparate treatment or bias in the reinstatement” decision. Ante, at 530.
Kaufman’s allegations fit in that category because they allege retaliatory bias in the EPA’s denial of reinstatement. Those claims fail, but, respectfully, not for the reasons cited by the majority. In the course of explaining its rejection of Kaufman’s claims, the majority observes that, “[sjince there was never in this case a termination, there was no reinstatement process, nor indeed any other process, let alone a defective process.” Id. at 530. But the majority ultimately does not — and could not — rest on the absence of a “termination.” While Kaufman was never fired from his position, he was divested of his Ombudsman-related duties. And the Supreme Court draws no distinction for discrimination or retaliation purposes between “termination” and other adverse actions such as “failure to promote” or “denial of transfer.” See Morgan, 536 U.S. at 114, 122 S.Ct. 2061. Nor does — or could— the majority ultimately hinge its decision on the absence of any formal “reinstatement process.” The denial of reinstatement can give rise to a claim if grounded in discriminatory or retaliatory bias, regardless of whether any formal process attends the denial. Indeed, one of the cases cited by the majority in setting out when reinstatement claims might be made, EEOC v. City of Norfolk Police Department, 45 F.3d 80 (4th Cir.1995) (cited ante, at 529-30), establishes that refusal of reinstatement through informal means can be actionable. See Norfolk Police, 45 F.3d at 84-85 (holding that where white police officers were customarily reinstated imme *533 diately after criminal charges against them were dropped, while an African-American officer was required to complete a formal administrative appeal process, EEOC can pursue a discrimination claim against the police department for failing to reinstate the African-American officer through informal procedures).
The majority ultimately rests its decision on the conclusion that EPA’s actions denying reinstatement to Kaufman do not constitute adverse actions, and that the “motivation behind these actions” is thus “immaterial.” Ante, at 528-29. I fail to see how that could be the case. Indeed, the majority — correctly—assumes that EPA’s original removal of Kaufman’s Ombudsman functions qualifies as an adverse action. Id. at 528. If so, the later refusal to reinstate precisely the same functions should equally count as an adverse action, no less than a refusal to rehire a previously terminated employee surely constitutes an adverse action. The question, then, is whether the adverse action was undertaken for an illicit reason. The motivation behind the EPA’s denial of reinstatement here, consequently, is very much material. Considering the question of motivation to be “immaterial,” in my respectful view, unduly complicates the resolution of reinstatement cases and deflects attention away from what should be the central issue: whether the denial of reinstatement was motivated by discriminatory or retaliatory bias.
I believe Kaufman’s claims run aground on that issue. In certain cases, an employer’s refusal to reinstate an employee to his former role may be motivated by the employer’s adherence to its prior decision. And an employer’s policy of declining to revisit previous personnel decisions could constitute a legitimate, nonretaliatory, and non-pretextual reason for refusing to reinstate the employee. See, e.g., Collins v. Henderson, 180 F.3d 988, 989-90 (8th Cir.1999) (where plant manager said that, “ ‘[i]n the interest of fairness and consistent treatment of all employees,’ ” the plant “ ‘does not entertain reinstatements or transfers of personnel who have previously been released,’ ” the plant manager’s explanation qualified as a “legitimate nondiscriminatory reason” for his decision). Moreover, an employer’s refusal to reinstate an employee “cannot resurrect the old discriminatory act.” Burnam v. Amoco Container Co., 755 F.2d 893, 894 (11th Cir.1985). For the failure to reinstate to be actionable in its own right, there must be “a new and discrete act of discrimination in the refusal to [reinstate] itself.” Id.; see also Poolaw v. City of Anadarko, 660 F.2d 459, 465 (10th Cir.1981) (employee’s “allegation that his post-termination treatment was discriminatory is a claim separate and distinct from his allegation of discriminatory discharge”).
Applying those principles to Kaufman’s case, I believe Kaufman would be able to assert a viable retaliation claim based on EPA’s denial of reinstatement if he could establish that the refusal was itself motivated by retaliatory intent. For instance, if Kaufman could show that the new EPA Administrator had reversed other personnel decisions made under her predecessor, and if Kaufman could further show that the Administrator refused to reinstate Kaufman because of his whistleblowing activities, Kaufman’s retaliation claim might well succeed. By contrast, if EPA declined to reconsider the merits of the December 2000 Fields memorandum because it adhered to prior personnel decisions as a matter of policy, the refusal to reinstate Kaufman in the spring of 2001 presumably would not be a discrete retaliatory act. As I see it, this case therefore comes down to whether the Department of Labor, as the agency that adjudicated Kaufman’s claims, afforded adequate consideration to Kauf *534 man’s argument that EPA refused to reinstate him for retaliatory reasons.
In the proceedings before the ALJ, Kaufman alleged that EPA did reconsider the merits of the December 2000 decision and that its refusal to reinstate him was retaliatory in its own right. EPA, for its part, argued that it “simply reiterated” the December 2000 decision without ever revisiting it. Resp’t Post-Hr’g Br. 3. The ALJ considered these arguments and credited EPA’s version of events. See ALJ’s Decision & Order at 43 (finding that EPA’s actions with respect to Kaufman in March 2001 and thereafter were “the consequences of Fields’ December memo precluding Kaufman from performing the Ombudsman duties”). The ALJ’s conclusion is supported by substantial evidence and provides a sufficient basis for upholding the Department of Labor’s decision.
At times, however, the ALJ suggested that EPA’s refusal to reinstate Kaufman in the spring of 2001 was not “adverse” to him, and the ARB affirmed the ALJ with little independent analysis. While those references, for the reasons explained, introduced unnecessary confusion into the case, “we will uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.” Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); accord Wis. Pub. Power, Inc. v. FERC, 493 F.3d 239, 273 (D.C.Cir.2007) (per curiam) (“Although FERC’s wording may have been less than precise on this point, the agency’s path may reasonably be discerned_”) (internal quotation marks omitted); Nat’l Treasury Emps. Union v. FLRA 835 F.2d 1446, 1450 n. 4 (D.C.Cir.1987) (denying petition for review where “the substantive thrust of our reasoning accords with that of the [agency]”). Accordingly, my own view is that, with respect to the claims concerning EPA’s refusal to reinstate Kaufman in the spring of 2001, the petition for review should be denied because Kaufman has failed to show that EPA’s proffered reason for its refusal — adherence to the prior personnel decision — was pretext for retaliatory animus. I would not hold, however, that Kaufman “failed to demonstrate that [the refusals to reinstate him] were adverse.” Ante, at 530.
Nor, finally, would I hold that Claims 2 through 6, concerning EPA’s challenged March-May 2001 actions, “were barred by the relevant statutes of limitation.” Id. at 522. There is no contention that Kaufman filed (or amended) his complaint more than 30 days after the allegedly retaliatory actions about which he complains. Claims 2 through 6 all refer to events on or after March 5, 2001, and Kaufman filed his first complaint on April 3. As a matter of straightforward arithmetic, Kaufman’s claims face no limitations bar. His claims may be unmeritorious, but they are not untimely. And those two questions should be kept distinct in light of the particular interest in maintaining a straightforward approach when addressing statutes-of-limitations questions at the threshold. See, e.g., Gonzalez v. Thaler, — U.S.-, 132 S.Ct. 641, 655, 181 L.Ed.2d 619 (2012); Wilson v. Garcia, 471 U.S. 261, 275, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).
The majority states that, if a refusal to reinstate can “commence the rerunning of the statute of limitations” in the circumstances of this case, that “would effectively write the statutes of limitations out of the law.” Ante, at 530. I respectfully disagree. Many circuits recognize that the denial of reinstatement is independently actionable if motivated by discriminatory or retaliatory bias, see Josephs, 443 F.3d at 1060, and there is no indication that courts in those circuits have been deluged with claims concerning long-ago events. It *535 is true that a terminated employee cannot “revive a barred claim simply by asking, ‘Am I still fired?’ ” Ante, at 530. An employee could not get past the limitations bar by attempting to “revive a barred claim,” but instead would need to raise a new claim alleging new discrimination connected to a new action (that of denying reinstatement). An employee who can do so should be permitted to proceed. If his employer refused to reinstate him for reasons proscribed by Congress, the fact that he had already suffered an adverse action at some previous point should pose no limitations bar against his bringing a new claim based on the new discriminatory or retaliatory act. That is what Kaufman attempts to do here. His claims fail on the merits for the reasons explained, but not for failure to bring them on time.

 The majority suggests that it is "not crystal clear” that EPA's original decision to bar Kaufman from performing Ombudsman-related work would constitute an "adverse” action under federal antiretaliation laws. Ante, at 527-28. But the case that the majority cites for this claim, Brown v. Brody, 199 F.3d 446 (D.C.Cir.1999), appears to have been superseded on that point by a later Supreme Court decision. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (action is "adverse” under Title VII antiretaliation provision if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination”) (internal quotation marks omitted); see also Steele v. Schafer, 535 F.3d 689, 695-96 (D.C.Cir.2008) (district court erred by relying on Brody standard rather than Burlington Northern standard). The Secretary of Labor, the respondent in this case, acknowledges that "Kaufman suffered an actionable harm when the EPA barred him from performing Ombudsman duties.” Resp’t Br. 43. The Secretary’s recognition is unsurprising, as EPA’s decision to prohibit Kaufman from performing Ombudsman-related work falls squarely within the now-settled understanding of an "adverse action” in the retaliation context. See generally Baird v. Gotbaum, 662 F.3d 1246, 1248-50 (D.C.Cir.2011). And while transfer to a materially less favorable set of responsibilities would itself suffice to constitute an adverse action, Kaufman also contends that EPA’s decision to bar him from performing Ombudsman work had the effect of preventing his promotion from a GS-14 salary level to a GS-15 level. A forced transfer resulting in denial of a salary increase readily qualifies as "adverse” under any definition. See Burlington Northern, 548 U.S. at 68, 126 S.Ct. 2405; Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).